## No. 12,875.

GOLDMAN & MASUR VS. L. H. GOLDMAN. *In re* Goldman & Masur apply-
ing for *certiorari,* or writ of review, to the Court of Appeals,
Second Circuit, State of Louisiana.

### SYLLABUS.

1.  A contract by a vendor of a mercantile business and good will not to engage
    in a similar business in a specified place for three years, and stipulating
    for the payment by the obligor of a certain sum to the obligee, in the event
    of a violation of the agreement, provides for "liquidated damages" and not
    for a penalty.
2.  It will not do to apply to the results of a violation of an agreement "not to
    do" the rules applicable to a violation of an obligation "to do." There is an
    entire breach of an obligation "not to do" the moment the obligor does what
    he has covenanted "not to do," and the obligee is entitled to sue the obligor
    at once for the breach; he is not forced to wait until the end of the term
    fixed as that during which the obligor had covenanted not to engage in bus-
    iness, in order to ascertain (even if he could do so) the actual damage to
    result from the obligor's action.
3.  An amount stipulated to be paid by way of "liquidated damages" is sub
    ject to reduction, under certain circumstances, no less than is that stipu-
    lated to be paid as a "penalty."
In either class of cases when reduction is permissible, and the obligee sues for
    the whole amount upon the instrument evidencing the agreement, the
    *onus* is upon the party claiming a reduction to establish the extent of the
    same.
The obligee is entitled to rest upon the amount primarily agreed upon as that
    due, and is not called on to make extrinsic affirmative proof of his damages.
In the absence of counter proof, he is entitled to judgment upon establishing
    the contract and showing its violation.
4.  The mere length of time during which defendant may have observed, or
    may have violated his obligation not to engage in business for a certain
    period, furnishes no basis upon which to estimate a reduction either of a
    penalty or of liquidated damages.

### ON REHEARING.

1.  Questions open. Issues between parties in another suit had not been set-
    tled and were not a bar to review.
2.  Ruling heretofore. This ruling was not binding upon the Supreme Court.
3.  Law and facts. Issues involved interpretation of a penal clause of con-
    tract.

*A. A. Gunby* and *E. T. Lamkin* for Relators.

*Respondent Judges* for themselves.

*Hudson, Potts & Bernstein* (C. J. Boatner of Counsel) for L. H. Goldman, Respondent.

Submitted on briefs August 1, 1898.
Opinion handed down March 7, 1899.
Rehearing refused (reasons assigned) April 7, 1899.

On application for rehearing by BREAUX, J.

The opinion of the court was delivered by
NICHOLLS, C. J.  It is represented in the petition, that on the 14th of January, 1894, Goldman & Masur, a commercial firm, composed of Simon Goldman and David Masur, both residents of the city of Monroe, parish of Ouachita, in this State, purchased from L. H. Goldman a stock of goods in the city of Monroe, and the good will of the business of selling goods, boots, shoes, notions, etc., carried on by L. H. Goldman in that city.

In order to protect and secure the good will so purchased, L. H. Goldman executed and filed a written obligation to pay the petitioner the sum of two thousand dollars, in the event that he should, within three years after the date of the sale, carry on, or assist any other person to carry on in person the business of selling or retailing dry goods, notions, shoes, etc.

That they filed suit in the Fifth District Court of the parish of Ouachita on the 5th day of August, 1895, alleging that L. H. Goldman had openly and continuously violated his contract; and, after answer filed and trial had in that court, the judge rendered judgment in favor of petitioners, for the sum of two thousand dollars, with 5% interest from judicial demand; from which an appeal was taken to the Second Circuit Court of Appeals.

That the Court of Appeals decided, that there had been a breach of the contract, according to its plain terms, but that petitioners could only recover the amount of damages they could prove were caused by the open violation of the contract, holding that an obligation to pay a specified amount for breach of that contract did not liquidate or fix the amount to be paid.

That the Circuit Court reluctantly remanded the suit to the District

Court, where it was again tried, and a large amount of evidence introduced to show the nature and extent of the damages caused by defendant's breach of contract; but the judge *a quo* held, that the proof was not specific enough, and non-suited plaintiffs, which judgment was affirmed by the Circuit Court at Monroe, on the 19th day of May, 1898, and the rehearing refused on the 27th day of that month and year.

That, they are aggrieved by that decision, which is a practical denial of justice; that the amount of damages caused by the violation of the good will of a business, is not susceptible of proof by any known or satisfactory rule; that the clear intention of the parties to that written contract sued on was, to fix the amount of damages or penalty to be paid, in the event said good will was violated.

That such contracts have been held to be valid and binding by the decisions of this court, and effect and interpretation given to them, according to the clear intention of the parties.

That the judgment of non-suit completely and effectually destroys all right and interest of petitioners in the contract; for, it is manifestly impossible to comply with the rules of proving the damages laid down and required by the Court of Appeals.

That the decision of the Court of Appeals was rendered after the Constitution of 1898 was adopted and in force; and is subject to review by this court.

That the opinions and decrees of that court are at variance with the jurisprudence of the State of Louisiana, and in contravention of the laws of the State of Louisiana, as to the rights of parties under such contracts, and the proper effect and construction of the same, and they aver, that the ends of justice require, that that decision should be brought up for review by the Supreme Court of Louisiana.

They, accordingly, pray, that a *certiorari* and all proper orders issue, directing that the papers and proceedings in the suit above mentioned be sent up for review by this court.

The respondent judges for answer to the writs of error and *certiorari* issued, annex copies of their opinions and decrees pronounced and filed in the suit on the 15th of January, 1897, and May 19, 1898, stating that the opinions contained a full and succinct statement of all the questions of law determined by them in the cause, and of the facts bearing thereon, as shown by the record of that cause. They pray to be discharged for costs and general relief.

The following is an extract from the opinion and judgment rendered by them on the 15th of January, 1897:

"This suit is brought to enforce the penal clause in the following agreement, entered into between plaintiffs and defendant, to-wit.:—

" 'Know all men by these presents, whereas, on or about the 14th day of January, 1893, L. H. Goldman sold to Goldman & Masur, his mercantile business at Monroe, Louisiana, consisting of dry goods, notions, boots, shoes, hats, and gent's furnishing goods, and, also, the good will of said business; and, whereas, since that time the said L. H. Goldman has purchased the interest of W. M. Ethridge in the mercantile business of E. & F. at Monroe, Louisiana; and, whereas, the said E. & F. stock is partly composed of dry goods, notions, shoes, and gents' furnishing goods, et cet.; now, therefore, it is mutually agreed and contracted by and between the parties hereto, that the said L.H. Goldman may sell the stock on hand of said E.& F., but that after this stock is closed out, the said L. H. G. hereby obligates and binds himself to, and in favor of Goldman & Masur, not to engage in the retail, mercantile business at Monroe, La., for three years from and after this date, for the sale of dry goods, notions, shoes and gents' furnishing goods, either in his own name, or in the name of another, or of a company in which he is interested, nor assist another to do so.

" 'In event of a violation of this contract, the said L. H. G. agrees to forfeit and pay to the said G. & M. the sum of $2,000.00, to be recovered in any court of competent jurisdiction.

" 'February 24th, 1893.' "

"The plaintiffs aver, that in a short while after the execution of the above contract, the defendant openly and actively violated the obligations assumed by him therein; that, early in March thereafter, he organized a mercantile corporation for the purpose of conducting a general retail, mercantile business in the city of Monroe, of which he was the president and active business manager; and carried on said business in said city in active competition with them, and to their great detriment and damage; that the intent, purposes and object of the said contract, was to fix and liquidate the damages which defendant was to pay in case of a violation of the agreement by him; that they had been damaged more than $2,000, but, as the amount had been fixed at that sum, they could not recover more; and, therefore, prayed for judgment for that sum.

"The defendant plead a general denial, admitting the execution of the contract.

"He further specially averred, that, the contract was one with a penal clause; and, if it could be enforced at all, it could only be done to the extent of the actual damages inflicted upon plaintiffs by the alleged violation; and he specially denied that he had violated the agreement in any degree whatever; or that damages to any amount had been suffered by plaintiffs.

"The lower court held, that there had been a breach of the contract; and, as the parties had determined the sum themselves to be fixed paid as damages, gave judgment for the full amount; from which judgment, defendant is appellant to this court.

"The main issue in the case turns upon the question whether the sum of $2,000 named in the contract as the sum which defendant agreed to pay in case of its violation by him, is to be considered as a *penalty* in the sense of articles 2127 and par. 5 of Art. 1934 of the Civil Code, and can therefore be modified or reduced by the courts in case of a partial execution of the principal obligation; or, is it to be considered as 'stipulated' or 'liquidated' damages, in the sense that it is the amount agreed on and fixed by the parties in advance as the damages that the plaintiffs would suffer on account of a breach by defendant; and thus having been fixed and liquidated by the parties themselves, they intended that the plaintiffs should recover that sum and no other; in which case the courts would be powerless to reduce the amount; and could only award the amount named in the contract. * * *

"In the instant case the parties to the contract have not expressly declared that the sum named should be considered as stipulated or liquidated damages; nor, have they used any terms which necessarily imply that the whole sum was to become due; even on the least or a partial breach of the agreement; nor is the contract one of that kind where the damages are not capable of being ascertained by any satisfactory or known rule. * * *

"In the present case, the primary object to be attained by the parties, the cause and object of their agreement in aid and to secure the performance of which this penalty was stipulated, was, that the defendants should not engage in the retail mercantile business in dry goods, boots, shoes, etc., for the space of three years, in the city of Monroe. It was not to recover the sum of $2,000. And plaintiffs, in-

stead of suing for the penalty, might have enforced a specific performance.

"Otherwise, we would have a facultative obligation on the part of defendant, either to abstain from business, or to pay the money and engage therein—in other words, purchase the right from plaintiffs; in which case, he would have the option, and not plaintiffs, and the obligation to pay the money would be a distinctly primary obligation, with the agreement not to engage in business as only secondary to be enforced only in case of non-execution of the primary.

"But plaintiffs repudiate any such construction, and rightly maintain, that they had the option either to specifically enforce the principal obligation, or sue for the penalty.

"Such being the case, we can not presume that the intention of the parties was to make this secondary obligation of paying the money, extinguish the principal one of refraining from business, nor to base the principal one upon it. Poth. Obl. No. 341. ⁂ ⁂ ⁂

"We conclude, that the intention of the parties was, to prevent the defendant from engaging in the business specified, for the entire term of the contract, and that the penal clause was stipulated for the purpose of accomplishing that end; and, inasmuch as the payment of the whole sum would novate or satisfy the original or primary agreement, thereby releasing him therefrom, we conclude that the amount named should be considered technically as a 'penalty,' and not as 'liquidated damages.'

⁂ ⁂ ⁂ "In the case at bar, there is no such 'contrary agreement,' no express agreement that the sum fixed by the contract shall be paid, even on a partial breach of the agreement.

"And the principal obligation having been 'partly executed,' and, there having been only a 'partial breach' of the contract, the other provisions of the articles mentioned apply also, viz.: the right of the court to modify the penalty, to reduce the damages agreed on to the loss suffered, and the gain of which the obligee has been deprived. We do not conceive that any of the authorities cited by plaintiffs' counsel on this point, militate against this proposition.

"They merely hold, that such contracts as the one before us, are not invalid, as being in restraint of trade, or contrary to public policy; and, therefore, the penalty may be enforced when incurred. But they nowhere touch upon the point whether there can be a modification of the penalty, where there is only a partial breach, or has been

.a partial execution. In none of them was there any claim of a partial execution, or a partial breach only; and, consequently, no claim for a .modification or reduction of penalty.

"The case of Solomon vs. Diefenthal, 46th Ann. 897, cited and quoted by plaintiffs' counsel, in no way conflicts with the foregoing .positions, but rather inferentially sustain them.  *  *  *

"In the case of the present defendant against the present plaintiffs, reported in the 47th Ann., p. 1463, this same demand for $2,000 penalty for violation of this contract was pleaded in compensation of the note for $6646.46, given by the vendees as part of the purchase ·price of the goods and business which they had bought from the defendant.

"Objection was made to its consideration by the court, upon the . ground, that it was not 'equally liquidated and demandable,' as provided by Article 2209 of the Civil Code, notwithstanding the question of the breach of the contract and the resulting damages had been gone into fully without objection from the plaintiff in the case, and the court had as much evidence before it as we have.

"But the court declined to consider the demand holding it not to be ·'equally liquidated' and demandable 'with the note sued on.'

"The court say:  'The defendant pleaded in compensation the amount of the penal obligation of the plaintiff, not to engage in business.'

" 'The penal obligation is, of course, conditional in its character, and, if susceptible of enforcement at all, the amount is modified in case of ·the partial execution of the principal obligation. · The plaintiff denies any violation of the agreement in aid of which the penalty was stipulated; or, if any, insists it was but partial and inconsiderable. The demand in compensation must be fixed, 'equally liquidated and demandable' as the Code puts it.

" 'We think it clear, that the demand on a penal clause, *unliquidated* and undisputed, can not be pleaded in compensation against a promissory note.' (Italics ours.)

"It will be seen that it is indirectly held, that the demand in the penal clause in this contract was 'unliquidated.'

"If then 'unliquidated' why? Because it was subject to reduction, to modification in the case of a partial execution of the principal obligation, for, if it was 'liquidated damages' it was not subject to any ·reduction or modification; and was 'equally liquidated' with the note.

as was ably contended for by the counsel for the defendant there, now counsel for the plaintiffs here.

"It is true the demand in compensation was rejected upon the double ground that it was not 'equally liquidated' and not 'equally demandable' with that of the plaintiff, as a breach had to be proven *dehors* the instrument; and that the decision might have been rested upon the latter ground alone; but it is, nevertheless true, that the character of the demand as to its being fixed and liquidated damages, and not a penalty subject to reduction was distinctly put at issue by the pleadings; was fully argued by counsel, and directly passed upon by the court, and held to be unliquidated, and consequently, a penalty subject to modification and reduction.

"Therefore, then, both upon reason and authority, and upon the construction which we think the Supreme Court has already placed upon this instrument, we consider the amount of $2,000 as in the nature of a penalty, subject to modification and reduction upon a partial execution of the principal obligation.

"With this view of the legal construction of the clause of the contract which this suit is brought to enforce, we are brought to the consideration of the question of fact presented, to-wit: Was there a breach of the principal obligation; if so, to what extent, and in what sum were plaintiffs actually damaged by said breach; the *maximum* limit for which the court render a judgment being the said sum of $2,000?

"The evidence is voluminous, and that of the immediate parties very conflicting, as well as acrimonious.

"The extent to which this opinion has already progressed in arguing and determining the legal questions involved, forbids any extended statement or analysis thereof; and, we must content ourselves with stating only the conclusion we have drawn; referring to the able opinion of the judge *ad hoc* in the case of L. H. Goldman vs. Goldman & Masur, which is in evidence in this cause, for a more extended statement, and which contains a very fair resumé of the facts.

"We think the evidence clearly proves that there was a breach by the defendant in the establishing and conducting of the business of the Parlor City Company, Limited; that he continued the business for two months, but, that, with the exception of these two months, and of the fact of the carrying on of this business, he has observed the

obligations of the contract, and, therefore, that the contract has been executed by him in by far the greater part of the time.

"Therefore, the plaintiffs are entitled to recover the real and actual damages suffered by them—that is, 'the loss really suffered, and the gain of which '(they)' have been deprived.

"This damage, the evidence fails to furnish us a basis to estimate. There is page on page of it, but it all seems to have been directed to the disputed point, whether there was a violation of the agreement by defendant. Around this point, the testimonial battle raged, and but little attention was paid to the matter of actual damages.

"Especially was this so with plaintiffs, their counsel resting on the position, that when he had established a breach of the principal obligation, the instrument itself fixed the damages.

"But, when he apparently endeavored to enter on a line of testimony tending to prove actual damages, he was met with an objection of irrelevancy which was sustained by the court, and he was cut off from the enquiry.

"Under the view of the law of the case taken by the judge *a quo*, this ruling was correct, but, under the views expressed by us, it was erroneous.

"What plaintiffs might have been able to prove on this line had they been allowed to do so, of course, we are unable to say, but it was very material evidence, as without evidence showing their actual damage, they could not recover.

"Plaintiffs have a cause of action. The contract has been violated, and damages are due them, such as they have suffered. It is probable from the record, that they have suffered some damage; and we think, that entire justice requires under the circumstances, that they should be allowed another opportunity to show what that damage is. We have concluded, therefore, to remand the case.

"We do this with reluctance, as it is to the interest of both parties that this litigation should cease; but, if we should attempt to estimate the damages from the evidence before us, we would either have to proceed upon an illogical basis, or resort to mere guess work.

"It is therefore ordered, adjudged and decreed that the judgment of the lower court be avoided and reversed, and that this case be remanded to the lower court to be proceeded with in accordance with law and the views herein expressed; the plaintiffs and appellees to pay

the costs of this appeal, those of the lower court to await the final de-.cision of the cause."

On the return of the cause, the District Court non-suited the plaintiffs, and they appealed.

On the second appeal, the Circuit Court handed down an opinion in which it said:

"This case was before us at the January term, 1897, and the issues involved, and the nature of the obligation sued on were fully set forth and discussed in our opinion rendered on January 15th, 1897.

"In our decree of that date, we remanded the case for a new trial, for the reason that the district judge had declined to receive evidence to show how much plaintiffs had been damaged by defendant's breach of the contract sued on.

"This contract had, in the suit of L. H. Goldman & Masur been plead in compensation, and a large amount of testimony taken in support of the plea, which, also was before us on the former appeal, ibut with it we could not find sufficient evidence upon which we could base an estimate of the damages or loss suffered by those plaintiffs, so we then said: 'If we should attempt to estimate the damages from the evidence before us, we would either have to proceed on an illogical basis, or resort to mere guess work.'

"The case was again tried in the District Court, and a judgment of non-suit rendered, and plaintiffs appealed."

After reciting the evidence found in the record on the second trial, the court said:

"The judge ad hoc who tried the case the last time felt unable or unwilling to fix upon any sum, and rendered a judgment of non-suit against plaintiffs, and we can not say that there was any error in the judgment.

"It is therefore ordered, adjudged and decreed that the judgment .appealed from be affirmed at appellant's costs."

The judgment of the Circuit Court was based upon the ground, that it had been shown that the defendant had violated, during only a short period, the obligation which he had assumed not to carry on or assist any other person in carrying on at Monroe, Louisiana, the business of selling or retailing dry goods, notions, shoes, etc., during the term of three years. That having observed the same for the balance of the term, this observance was a partial execution of the contract, .entitling defendant to a reduction of the amount which had been

fixed in the agreement, as that which was to be paid to the plaintiff. That under such circumstances, the burden was not thrown upon the defendant of showing the extent of the reduction to which he was entitled, but upon the plaintiff, of establishing affirmatively to what extent he had been damaged.

The court seems to have reached the conclusion, under the belief that plaintiffs would occupy a different position when they were suing for enforcement of a conventional penalty, from that which they would, if suing upon a demand for liquidated damages, when the defence set up was a partial execution by the defendant of his contract.

Article 2125 of the Civil Code declares the penal clause to be "the compensation for the damages which the creditor sustains by the non-execution of the principal demand"—that "the creditor can not demand the principal and the penalty together, unless the latter be stipulated for the mere delay"—and article 2127 that the penalty may be modified by the judge when the principal obligation has been partly executed; while article 1934 (an article found in the Code under the heading of "damages resulting from the inexecution of obligations") declares, that "when the parties by their contract have determined the sum that shall be paid as damages for its breach, the creditor must recover that sum, but is not entitled to more. But when the contract is executed in part, the damages agreed on by the parties may be reduced to the loss really suffered and the gain of which the party has been deprived, unless there has been an express agreement that the sum fixed by the contract shall be paid even on a partial breach of the agreement."

It will be seen, that the law provides for a reduction in case of partial execution, as well in a case where damages have been liquidated by agreement as one where a "penalty" has been provided for—the claim for reduction in the case of a penalty being cut off only "in case of a contrary agreement," and in the other case only there is an express agreement that the sum fixed by the contract shall be paid even on a partial breach of agreement.

Article 2222 declares, that "he who claims the execution of an obligation, must prove it. On the other hand, he who contends that he is exonerated, must prove the payment, or the fact which has produced the extinction of the obligation."

The plaintiffs in this case have not attempted any judicial proceedings by injunction to force the defendant to comply with his obligation of not engaging in business, nor have they asked in this suit

either for a specific performance of that obligation without damages, or for a specific performance with damages added.

They have abandoned all claims for a specific performance, and sue upon the instrument for the full amount of the damages expressly stipulated and fixed in the agreement which it evidences.

The agreement between the parties as to the amount which defendant would have to pay in the event of a breach of the contract under such circumstances, can not be ignored by the court, or by the parties, and be made to count for nothing, whether the amount should have been agreed upon by way of "penalty" or by way of "liquidated damages."

It would stand (even if the case were a proper one for reduction) as *prima facie* proof of the extent of defendant's rights in either case, and to be accepted as the measure thereof, unless defendant could affirmatively establish not only his right to a reduction, but the extent of the reduction.

Plaintiffs, upon establishing the obligation and proving the breach, and exhibiting the contract between the parties as to what should be the amount to be due by the obligor in case of the breach of the contract, could safely rest upon the latter until a right to a reduction and the extent of the reduction should be shown. It may be, that had the plaintiffs brought suit claiming partial damages, and coupled with the same one for an injunction, they might as plaintiffs be held to proof of the special damages, but they did nothing of the kind.

The Circuit Court on the first appeal before it of this cause reversed the judgment of the District Court, which was for plaintiffs, for the amount fixed by the parties in their agreement, and remanded the case.

On the return of the case, plaintiffs attempted to prove up the specific amount of the damage received by them, and were met in their attempt to offer evidence to establish the same by objection on the part of the defendant, that such testimony was irrelevant.

The District Court overruled the objection, but, after consideration of the whole evidence, non-suited the plaintiffs.

They appealed, and the judgment of the District Court was affirmed.

We are of the opinion, that the court erred in forcing upon the plaintiff the obligation of establishing by proof the amount of the damage they had sustained, precisely as if the agreement between the parties as to the amount the defendant was to pay in case of a breach by him of his obligation had not been made.

In the case at bar, the obligation for the violation of which damages are claimed, is not an obligation "to do," but one "not to do," and, in the very nature of things, as said in the case of Stafford vs. Shortreed, 17 N. W. Rep. 756 (referred to in Solomon vs. Diefenthal, 46 Ann. 897), and, as recognized by the Court of Appeals itself, the amount of the damages must be "the subject of mere conjecture, and could not be established by evidence even approximately."

Plaintiffs would be in ignorance of the extent of the business conducted by the defendant to their detriment.

If the damage admitted of being gauged at all, defendant would be in much better position for doing so, by reason of his knowledge of his own affairs, than plaintiffs would.

The mere length of time during which defendant may have observed, or may have violated his agreement not to engage in business for a certain period, would furnish no basis whatever upon which to estimate a reduction either of a penalty or of liquidated damages, for the whole damage may have resulted from damage done upon one single day.

It will not do to apply to the results of a violation of an agreement "not to do," the rules applicable to a violation of an obligation "to do."

There is an entire breach of an obligation "not to do," the moment the obligor does what he has covenanted "not to do," and the obligee is entitled to sue the obligor at once for the breach; he is not forced to wait until the end of the term fixed as that during which the obligor is not to engage in business, in order to ascertain (if he could do so), the actual extent of the injury to result from the obligor's conduct.

There is no hardship in holding the latter to a strict observance of his duty, and the results of the same.

He was well advised of the expressly stipulated consequences of his actions, and when he made an election as to his course, he should be compelled to pay the money stipulated to be paid. (Bagley vs. Peddie, 16 N. Y. 469 S. C.; 69 Am. Dec. 713.)

In obligations "not to do," the right of the obligee to enforce a "specific performance" by injunction is absolute, unless waived, while in obligations "to do" the right to a "specific performance" by "mandamus" or otherwise is dependent upon circumstances and to a considerable extent discretionary.

By interpreting defendant's obligations to be those resulting from an agreement providing for stipulated damages, instead of those re-

sulting from an agreement stipulating a penalty, we would not decide that the agreement created a "facultative obligation" entitling defendant to recede from his obligation not to engage in business upon payment of two thousand dollars, thus depriving plaintiffs of any legal power of control over defendant's actions in that respect.

Plaintiffs would themselves, in that event, determine what the situation would be.

The latter's ability in the present case to do so would be broader by holding the agreement to be one calling for liquidated damages, than it would be by holding it one calling for a penalty.

The amount stipulated to be paid by defendant in the event he should violate his engagement not being for a mere delay in doing something, plaintiffs would be restricted in their remedy, should the agreement be considered as evidencing a penal obligation, either to demanding a special performance of the obligation by means of an "injunction" or to a demand for the penalty; they could not ask both.

On the other hand, if it should be held that the amount stipulated to be paid was simply fixed as liquidated damages to cover a breach for the whole term the plaintiffs might elect (should the situation permit) to claim a smaller amount at a given date and simultaneously exact specific performance for the future by injunction.

In the case before us, the obligation "not to do" is not in aid of the enforcement of a primary obligation "to do" something.

There is no second obligation back of this obligation "not to do." The parties were stipulating as to this single obligation for its own breach, not of that of any other obligation.

They were contracting with direct reference to a fixed amount to be paid by defendant for violation of this particular obligation, not for the consequences of some other.

Agreements of the character of the one involved in this litigation by which a party bound himself "not to engage in business during a certain time" and stipulating for the payment by the obligor of a certain sum to the obligee in the event of a violation of the agreement, have been very generally held to provide for liquidated damages, and not for a penalty.

A number of decisions on this subject with comment upon them will be found in the American and English Encyclopedia of Law under the head of "Liquidated Damages," subdivision, "When a stipulation

will be treated as a liquidation of damages." (1st Edition, page 854.).

It is there stated that "it is now well settled that a sum (if it be at all reasonable) stipulated to be paid as liquidated damages for the breach of a covenant, will be regarded as such, and not as a penalty, where, from the nature of the covenant, the damages arising from its breach are entirely uncertain, and can not be ascertained upon an issue of fact."

The following, among other cases, were cited as instances of this class of contracts. "An agreement not to engage in a business or occupation named within a specified time or at a certain place, or within certain boundaries or limits, such as a contract that obligor's steamboats will not navigate certain waters for three years. (California Steam Nav. Co. vs. Wright, 6 Cal. 259 S. C.; 65 Am. Dec. 511.) An obligation to discontinue the operation of a laboratory near obligee's real estate after the expiration of five years .(Grasselle vs. Loudon, 10th Ohio St. 349). A covenant to refrain from the manufacture of stearine or star candles in a specified county and State until a time named (Lange vs. Werk, 20 Ohio St. 520), or, from publishing, editing or printing any newspaper v 'thin a certain village, while obligee continues in that business (Dai in vs. Williams, 17 Wend., N. Y., 447), or from engaging in the express business in a certain town in competition with obligee (Cushing vs. Drew, 97 Mass. 445). An agreement by a physician, surgeon, or apothecary (Sainter vs. Ferguson, 1 Mac. & G., 286), or an attorney or solicitor, (Galsworthy vs. Strutt, 1 Exch. 658) not to engage in the practice of his profession within certain limits, or before the expiration of a given period—a covenant by a partner upon dissolution of partnership and sale to partner, not to engage in the business within twenty miles (Nobles vs. Bates, 7 Co. N. Y. 307)—a contract not to run a stage on a certain line in competition with obligee (Pierce vs. Fuller, 8 Mass. 222)—a contract by a vendor of a mercantile business and good will not to engage as proprietor, clerk or employee in the general mercantile business for seven years within certain specified townships (Stewart vs. Bedell, 79 Pa. St. 336). A covenant that obligor will not go into the butchering business in a certain town, unless with obligee's consent, under a penalty of four hundred dollars (Streeter vs. Rush, 25 Cal. 67), or a marble shop under a forfeit of one thousand dollars."

It is stated that in cases of this character where the intent of the parties is so clear, the use of the word *"forfeit"* in the clause providing

for damages in case of a breach, is not regarded as of much weight. (Hall vs. Crowley, 87 Mass. 304.)

That where a stipulation in a contract of an amount to be paid by one party to the other for the breach of a covenant is held to be liquidated damages, there can be no controverted question of fact except as to breach of the agreement as the stipulation absolutely and alone controls the recovery and fixes its amount (Welsch vs. McDonald Va. 8 S. E., 711).

This latter proposition is too broadly stated to be thoroughly correct in Louisiana.

The opinion of the Circuit Court was based to a very considerable extent upon the decision of this court in Goldman vs. Goldman & Masur, 47 Ann. 1464, in which referring to the very instrument involved in this litigation we stated it could not be urged in support of a plea of compensation filed by the defendants therein, in a suit brought by the present defendants as vendor on notes given by the latter for price of a stock of goods purchased by them.

The Circuit Court gave to that decision a much wider scope than we intended it to have.

We simply held that the instrument in question was not of that fixed absolute character as to justify its being used at once by way of compensation.

That it was to a certain extent a conditional obligation as it would require extrinsic evidence—evidence de hors the instrument to establish not the extent of the liability of the plaintiffs, but the fact of the right of its present enforcement.

The Circuit Court having found that plaintiffs had shown a breach by defendant of his obligation, it should have reversed the judgment of the District Court, and given plaintiffs a judgment as prayed for in their petition.

We are of the opinion, that the agreement between plaintiffs and the defendant fixed the sum of two thousand dollars as being liquidated damages to be paid to plaintiffs in the event of its violation.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed, that the judgment of the Court of Appeal of the Second Circuit in the matter of Goldman & Masur vs. L. H. Goldman, on appeal before it from the Fifth Judicial District Court for the parish of Ouachita, and the judgment of said District Court in said matter which was affirmed by the said Court of Appeal, be and they are

hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the plaintiffs do have judgment against and recover from the defendant, the sum of two thousand dollars, with legal interest from judicial demand until paid, with costs in this court, in the Court of Appeals, and in the District Court.

## ON APPLICATION FOR REHEARING.

BREAUX, J. Plaintiffs, through their counsel, urge that this court has fallen into an error in its decision on the application for writ of *certiorari* in the issues involved as *res nova,* when instead, we should have considered them settled by the effect usually given to the thing already passed upon and finally adjudged with the force and effect always attending the *res judicata.*

The position taken renders it necessary to restate some of the facts.

In the case of Goldman vs. Goldman and Masur filed in 1895, the court *a quo* decided that the defendants, Goldman and Masur, could not plead as an offset to a note, he (L. H. Goldman) held, the bond he had executed in their favor in which he had obligated himself, for a specific time, not to engage in the retail merchandize business in Monroe, La.

Defendant's demand, based on a contract not to engage in business under a penalty of two thousand dollars, if plaintiff violated it, was not allowed; but defendants were reserved all their legal rights to proceed against plaintiff for its violation.

On appeal to this court the judgment was affirmed; the court holding that the defendants pleaded in compensation the amount of the penal obligation of the plaintiff not to engage in business, and that this penal obligation was conditional in its character, and if susceptible of enforcement at all, the amount is modified in case of the partial execution of the principal obligation; that the plaintiff denied any violation of the agreement, in aid of which the penalty was stipulated; if there was any, it was but partial and inconsiderable; that a demand in compensation must be equally as liquidated as the claim against which it is pleaded, and that demand in a penal clause, unliquidated and disputed, cannot be pleaded against a promissory note.

The judgment of the lower court, including the reservation made, was affirmed. Goldman vs. Goldman & Masur, 47th Ann. 1463.

Afterward, Goldman and Masur brought suit on the contract, and

on appeal to the Court of Appeals it was decided that the proof of the nature and extent of the damages caused by defendant's breach of contract was not specific enough, and non-suited plaintiffs, as previously they had been non-suited in the District Court.

1st. Defendants complain of the decree of this court rendered in the proceedings by the writ of *certiorari*, on the ground that it was too late to decree that the obligation involved made *prima facie* proof of the extent of defendants' right to be accepted as the measure of damages, unless the defendants can affirmatively establish not only a right to a reduction, but its extent.

In our view, the decision before cited is not as far reaching in its effect as interpreted by the learned judges of the Court of Appeals. It held that both claims, the claim of plaintiff on his note secured by mortgage, and the claim of defendants, were not "equally liquidated and demandable," and that the demand in a penal clause cannot be pleaded in compensation against a promissory note.

It does not follow from those views as expressed in the cited decree that the burden of proof was made thereby to shift from plaintiff to defendants, and that the *prima facie* presumption arising from such an obligation, was brought thereby to an end.

The claim presented in support of defendants' (Goldman and Masur) plea, did not, as in case of the note, identified with the mortgage, make proof of itself. It would have been needful in case the proof had been admitted to prove the breach of contract and dispose of the questions which do not arise in a suit on a note and mortgage, and for that reason this court sustained the lower court's ruling dismissing the demand as in case of non-suit.

2nd. Defendants set forth that this case was before the Court of Appeals for the Second Circuit at its January term, 1897, and that that court, following the decision before cited, construed the contract sued on, as an obligation with a penal clause, entitling plaintiff, on proof of its breach, to the recovery of such damages as he might prove growing out of the breach; that the character of the obligation had been determined, and with whom was the *onus* of proof, as between the parties, was finally decided and the cause remanded for the sole purpose of enabling plaintiff to show the quantity of damages which he suffered; that the decree was conclusive and final, and not subject to the revision of the court; that the Circuit Court on second appeal in the case, was limited to the sole question of determining, from the

evidence, how much damages, if any, plaintiff had suffered by the alleged breach of contract; and that the *certiorari* jurisdiction of the Supreme Court having attached long subsequent to the rendition of the first decree rendered in January, 1897, it is without jurisdiction to review any legal question decided then, and is limited to the review of the cause, as presented to the Circuit Court at its last meeting, in which the judgment now under review was rendered.

We find as a fact, it is not disputed that the last judgment rendered during the current year is clearly within the jurisdiction of this court under Article 101 of the Constitution, and that all issues involved may be reviewed by this court.

The contention is that the ruling in the prior case has already disposed of the issues now raised, and that it is not within the range of possibility in law to modify them in a subsequent appeal.

There was nothing finally decided in the previous appeal. The evidence failed to furnish a basis to estimate damages. It appears, there was page after page taken, all directed to the question of violation of the contract *vel non*. We are informed that on this question a testimonial battle raged, and the matter of damages received little attention, particularly, from plaintiffs, who chose to rest their case, exclusively, on breach of the principal obligation and the consequent damages therefrom arising in any contingency, as fixed in the bond; and when, in the course of the trial, they did attempt to prove actual damages, they were met by the objection of irrelevancy, which was sustained by the court. This, under the view of the Court of Appeals, was erroneous. The court found that plaintiffs had a right of action, but they must *prove* their damages, and, to give the opportunity, the case was remanded.

Thus, it appears that the decision which the defendant contends, fixed a right in his behalf, was one remanding the case to hear evidence under the court's opinion as to the burden of proof.

We have examined the decisions cited by defendant's counsel, and find that they sustain the rule, that whatever has been decided by the Supreme Court of the United States on one writ of error obviously cannot be re-examined on a subsequent writ brought in the same suit. Clerk vs. Keith, 106 U. S. 464. Citing a number of decisions of that court to the same effect.

Here the Supreme Court has not passed upon the point at all. The law of the case may be in full force and effect in the court *a qua*, and

should have been given due regard—as was given—on the trial in the District Court, but when it comes here, the ruling no longer controls. The defendant had acquired no vested right growing out of the court's view.

The plea of *res judicata* was not pleaded; if it had been, it would have had nothing upon which to stand; there was only a ruling as to the effect to be given to testimony, which ruling is binding upon the Court of Appeals and the District Court, but not upon this court, called upon; under the law, to review all issues not finally disposed of.

3rd. We take up defendant's last objection in the order of his argument, that the questions involved being exclusively questions of fact, this court is without jurisdiction.

We have already given our reasons for entertaining jurisdiction, and from our standpoint it is manifest, after considering the reasons given, that the questions involved are not questions of fact. They involved throughout, the construction to be placed on an agreement containing a penal clause, and we held that the issues were not so settled as to render it no longer possible for the Supreme Court to correct an error it conceived had been committed.

We are constrained to differ from counsel, and hold that the court has jurisdiction.

Rehearing refused.

Mr. JUSTICE MONROE not having been a member of the court when this case was submitted, takes no part in the opinion.