[Civ. No. 234.    Third Appellate District.—July 31, 1906.]

## MARION J. DONNELLAN, Appellant, v. WOOD, CURTIS & CO., Respondent.

LEASE OF FARMING LAND—EFFECT OF CANCELLATION UPON RENT—OVERFLOW PREVENTING CULTIVATION—STIPULATION.—Though it is the ordinary effect of the agreed cancellation of a lease that rent past due is collectible, yet where, in a lease of farming land, it is expressly stipulated that no rent shall be paid if the land is so injured by overflow or want of reclamation that it cannot be cultivated before June 1st, and the right to cancel the lease also depended upon such contingency, where the land had ceased to be a farm and had become a lake, and it became wholly uncultivable, the agreed cancellation of the lease for that reason was subject to the stipulation against rent, and none can be recovered.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order denying a new trial. Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

A. L. Shinn, for Appellant.

J. Frank Brown, for Respondent.

CHIPMAN, P. J.—Action for rent of farming land under the terms of a written lease made by plaintiff to defendant. The land leased (about five hundred and thirty-one acres) was situated in Reclamation District No. 673, in the county of Sacramento; the lease was entered into October 29, 1902, and was for the term of five years, commencing January 1, 1903; the rental was $10 per acre, and was to be paid in equal semi-annual installments on April 1st and September 1st during the term. The lease contained, among other provisions, the following: "5. It is further understood and agreed that if, by reason of flood or imperfect reclamation any part of the leased premises shall be submerged or overflowed to such an extent as to render it impossible to cultivate the same prior to the month of June in any year during the term of this lease, the party of the second part shall not be obliged to pay rental for the part or parts that may become submerged or overflowed. 6. It is further agreed that the party of the second part may, at its option, cancel this lease by giving notice in writing to the party of the first part, or her duly accredited agent, at any time during the term of this lease, should the reclamation of the leased premises be not sufficient to permit the cultivation and farming thereof at seasonable times of the year." The defense made in the answer was, that on February 26, 1904, the premises were overflowed and submerged to such extent as to render all the land impossible for cultivation prior to the month of June, or "to permit of the cultivation and farming thereof at seasonable times of the year"; that, under the terms of the lease defendant did, "on the tenth day of May, 1904, cancel said lease by then and there giving plaintiff notice in writing . . . and that thereafter, on the 11th day of May, 1904, plaintiff signified her concur-

4 Cal. App.—13

rence in the cancellation thereof, in writing, and then and there signified her intention to and did treat said lease as terminated of said tenth day of May, 1904.'' There was evidence sufficient to show these allegations to be true and the court so found. The record contains the following admissions: ''That the lease was canceled by the defendant with the consent of the plaintiff and on the tenth day of May, 1904, according to its terms, and that plaintiff took possession of the leased premises on said day; that the reclamation of the premises . . . was not sufficient to permit the cultivation and farming thereof at seasonable times of the year; that the leased premises were flooded on the first day of June, 1904.'' In his letter, replying to defendant's notice of cancellation, plaintiff wrote: ''While not admitting that the condition which justified you to cancel the lease existed, I nevertheless concur in the cancellation of the lease, and consider the same terminated of the date of your communication, namely, May 10, 1904, and I hereby demand of you payment of the rent due for said premises up to and including May 10, 1904, amounting to $3,145.85.'' The complaint was filed May 19, 1904, and the cause was tried in December, 1904.

After the cause was submitted the court of its own motion set the submission aside ''and asked the defendant to introduce evidence as to the use of the premises by the defendant after the first day of January, 1904, and the value of such use.'' Thereupon defendant asked and obtained leave to amend its answer by alleging that the premises were rented for farming purposes and that from January 1st to February 26, 1904, ''defendant farmed and cultivated said premises, but that no rents, revenues or profits were derived by defendant therefrom; that said premises were not susceptible of farming or cultivation for profit during said time, and that the use thereof was of no benefit to defendant; that from said twenty-sixth day of February to May 10, 1904, said premises could not be farmed, cultivated nor used for any purpose.'' The amendment was objected to by plaintiff as also was all evidence thereafter submitted on the question of use and value of use from January 1st to February 26th as not within the issues.

It appeared by the evidence that the cultivation given the land prior to February was by way of preparing it for seed-

ing later on in the season, and that all the labor thus bestowed was profitless.

The court found that defendant had used the barns, for the storage of hay, from January 1 to May 10, 1904, which defendant had sold but had not delivered and which was destroyed by the overflow of the premises; and for "the value of the use of said premises to defendant for the storage of said hay" the court awarded plaintiff judgment for $20, but denied any recovery for the stipulated rental payable April 1, 1904. The court was of the opinion that the defendant might have rested its defense upon the fact that it was wholly deprived of the beneficial use of the leased premises up to April 1st, but the learned judge preferred, as he stated in his opinion, to place his decision upon the provisions of section 1935 of the Civil Code, which provides: "When the hiring of a thing is terminated before the time originally agreed upon, the hirer must pay the due proportion of the hire for such use as he has actually made of the thing, unless such use is merely nominal, and of no benefit to him."

Appellant contends that this section has no application to the leasing of real property and that the rights of the parties rest alone on the terms of the lease.

The question is an important one and ably argued, but as we do not find it necessary to resort to the statute, we prefer to express no opinion upon the view taken by the trial judge.

Appellant states the question thus: Does the cancellation of the lease, made after rent has become due under the terms of the lease, relate back so as to cancel the obligations that have arisen between the parties before such cancellation? Answering the question in the negative, appellant advances the following propositions which fairly present the points made in the argument: that the parties through the lease contracted definitely with reference to the time of payment, the condition for revocation and specially provided conditions upon which rent should *not* be paid; that an action might have been maintained for rent due under the terms of this lease on the second day of April, 1904; that the defendant made it impossible to consider the conditions on the first day of June by terminating the contract, and therefore deprived itself of the benefit of that provision in the lease; that having expressly stipulated that rent should be apportioned with reference to the condition of the land on a certain date, such .

stipulation excludes an apportionment because of a previous termination of the tenancy; that the surrender of a lease does not operate as a discharge of rent already due; that the right of cancellation under the lease does not declare what the effect of the cancellation shall be, and hence the effect is to leave the parties in the position occupied by them at the time of cancellation with reference to mutual liability.

Appellant states the rights of defendant as follows: An election either to hold the lease, pay the amount due on the first day of April, 1904, and claim its deduction on the first day of June, if the conditions warranted it, or else cancel the lease "according to its terms" and pay whatever was due at the time of cancellation.

It may be conceded that some of appellant's propositions are sound and well supported by the authorities cited. For example, it is doubtless the rule generally that the surrender of a lease does not operate as a discharge of rent already due. But after all, the case must rest, as we view it, upon a proper construction of the lease, guided, of course, by recognized rules of law in arriving at such construction.

It required no evidence to show, what is patent on the face of the lease, that the parties contracted with reference to the possible overflow of the land, thus rendering it unsuitable for occupation or cultivation. Hence, liability to pay rent was made to depend upon the fact that this contingency did not happen, and the right to cancel the lease also depended on the happening of this contingency. There might have been a sudden and transitory submergence of the land by water, prior to June 1st, that would have passed away in time to enable the lessee to cultivate the land. But in order to fix a time beyond which the parties regarded it as impossible to cultivate the land for any given year, the limit was fixed to a time "prior to the month of June." That is, if the land was overflowed and remained so on May 31st, "to such extent as to render it impossible to cultivate the same," the lessee "shall not be obliged to pay rental for the part or parts that may become submerged or overflowed." But that by no means implies that defendant was liable for rent on April 1st, regardless of the then condition of overflow. We cannot agree with plaintiff that he had a right of action and could have recovered for rent on April 2d, admitting, as he does, that at that time the land was so overflowed as to make its cultivation

impossible. We think the very terms of the lease preclude such view of the case. It would violate the paramount object, manifestly in the minds of both parties, which was that there should be no payment of rental required if the land was rendered unsuitable for cultivation by reason of overflow. Any other construction would work gross injustice and this the law will never tolerate unless the parties have, by their contract, so tied the hands of the courts as to make them powerless to administer justice, which is not the situation here.

Appellant would obviate the manifest inequity of holding defendant to the payment of the April installment, notwithstanding that the land was then submerged by several feet of water, as the evidence shows, by giving to defendant the right to recover back the rent on June 1st, "if the conditions warranted it." The terms of the lease neither require nor admit of such construction. Cases cited where rented buildings were burned after rent had accrued do not seem to us to be in point, for here the possible use of the land was destroyed some time before April 1st, to wit, February 26th, and this condition continued not only to April 1st but after June 1st. The water was so deep that it destroyed the hay stored in the barns, and the dwelling was inhabitable in the second story only. The land had ceased to be a farm, and had become a lake. But defendant had agreed to pay rent for land at a stated rate per acre. The risks of overflow were taken by plaintiff, and there would be an utter failure of consideration where the land had become impossible of cultivation from the cause stipulated against.

We cannot agree with appellant as to the consequences flowing from the cancellation of the lease. It is true that it does not directly point out the effect of the cancellation, but reading the two clauses together, numbered 5 and 6, and considering the cause for which cancellation is allowable, it is quite evident that if the cause existed, the lessee had the right not only to cancel but to be acquitted of the promise to pay rent. Appellant says the effect was "to leave the parties in the position occupied by them at the time of cancellation with reference to mutual liability." What was that position? Simply this: If the premises were "overflowed to such extent as to render it impossible to cultivate the same . . . the party of the second part shall not be obliged to pay rental."

On May 10th the flood of February was still on and the parties, with this fact in their minds, mutually agreed that the lease might be and it was canceled. Plaintiff's consent was not necessary to the exercise of defendant's right, but he did consent, and although demanding rent, it was not made a condition to his consent, and would have availed nothing if it had been. He went into possession and the contract was at an end. We have held that defendant was not liable for rent on April 1st and as the premises were overflowed and was the cause of the cancellation, the "position of the parties" on May 10th was that of mutual nonliability rather than that of liability of either to the other. It must have been obvious to both parties on May 10th that cultivation of the land "at seasonable times of the year" had become impossible, and such was the fact as clearly appeared and was admitted. What would have been the liability of defendant had he canceled the lease on May 10th, and had the water subsided and the land become susceptible of cultivation, "prior to the month of June," we need not consider, for no such event happened; the land was still under water on June 1st. We are unable to discover any legal or equitable ground upon which plaintiff could hope to recover under the lease, in view of the facts and circumstances. So far as the judgment for $20 is concerned, defendant has not appealed and plaintiff is not injured thereby, although he objected to the evidence on which it rests and stoutly contends that the theory of the law supporting it is erroneous.

Some point is made, but we think not well founded, as to the lack of evidence to sustain certain findings.

The judgment and order are affirmed.

McLaughlin, J., and Buckles, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 28, 1906.