ST. PAUL, JJ
 

 On July 22, 1927,' the defendant leased to plaintiff the premises No. 401 St. Charles street in the city of New Orleans, for a period of foúrteen months beginning August 1, 1927, and ending September 30, 1928, with privilege of renewal for two successive terms of two years each. The object of said lease was for plaintiffs, whose main place of business was in Natchez, Miss., to continue as successors to defendant the retail clothing business which defendant had therein established; and one of the conditions of said lease was that defendant bound himself not to engage in the clothing business, or permit his name to be used therein, in the city of New Orleans or its vicinity, for a period beginning August 1, 1927, and ending July 31, 1939; and the parties agreed upon liquidated damages in the sum of $59,000 for the breach of this part of the agreement on the part of defendant. This is a suit to recover said damages. The judgment below was for defendant, and plaintiff appeals.
 

 
 *82
 
 Among several defenses set up by the defendant is a plea of estoppel, which is based! on the following facts:
 

 On March 27, 1928, plaintiff notified defendant that it would not renew the léase. During March and April, 1928, plaintiff advertised extensively in the daily papers that it intended retiring from the business, the expressions used being “selling out,” and “we tried, we failed, we quit.” On June 9, 1928, plaintiff sold out all its stock on hand to one Lou Welsh, who sold it all out by September 30, 1928, and on that day surrendered the premises to defendant; plaintiff in the meanwhile having returned to Natchez. From the time that plaintiff sold out to Welsh in June, 1928, it did not re-engage in business in the city of New Orleans until February 16, 1930, at which time it bought out one Bowsky at 429 St. Charles street. This was oyer twenty months after plaintiff had sold out its stoek to Welsh, and one month after this suit was filed.
 

 On October 1,1928, defendant had found no tenant for his building, and accordingly concluded to reopen business therein himself. He advertised extensively his intention to do so, and did in fact reopen his business a few weeks later. Plaintiff was aware that defendant was about to do so, and saw him preparing the premises for* that purpose, but made no protest whatsover, but on the contrary sat quiet whilst plaintiff prepared to open the business and went about purchasing his stock of goods, although at that time one of the partners was in New Orleans and knew what was transpiring.
 

 We think plaintiff was thus estopped. The contract between the parties was capable of two constructions: The one, that it was a mere arbitrary agreement by which defendant simply bound himself not to go into business without regard to whether plaintiff might or might not derive any benefit from defendant’s remaining out of business; the other, and more reasonable, interpretation was the clause was intended to protect plaintiff from competition by defendant whilst plaintiff continued in business in the city of New Orleans. Plaintiff might indeed take the first view, and defendant might likewise take the other view. But “when the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation.” R. C. C. art. 1956. Hence when defendant acted as though the contract was intended merely to secure plaintiff against competition whilst in the city of New Orleans, and plaintiff made no protest against his proceeding under that view, it estopped itself from thereafter questioning the correctness of defendant’s interpretation and his action thereunder.
 

 The case of Goldman & Masur v. Goldman, 51 La. Ann. 761, 25 So. 555, relied upon by plaintiff, does not support its contention. In that case the court construed a contract conceived in almost the same words as this contract, as intended “to protect and secure the good will so,purchased,” in other words, to protect the plaintiff against unfair competition by defendant. And the facts of that case seem to have been that plaintiffs were actually engaged in business and defendant opened a business “and carried on said business in said city in active competition with them.” Accordingly, that case lends itself rather to the view taken by defendant, than to that taken by plaintiff. At any rate, defendant acted on that view of the contract and plaintiff did not protest or complain in any manner at the time. We are therefore of opinion that plaintiff is estopped.
 
 *84
 
 Moreover, if plaintiff’s view of the contract were correct, to wit, that the prohibition against defendant’s going into business in New Orleans continued even after plaintiff had retired from business in that city, then the prohibition was null to that extent; because “a restraint to be reasonable must be such only as to afford a fair protection to the interests of the party in favor of whom it is given.” 13 Corp. Jur. 475 (verbo, Contracts, § 419).
 

 Plaintiff asks in reconvention that he be allowed attorney’s fees for defending this suit, on the ground that it is wantonly and maliciously brought merely to annoy and harass him. IVe see no such wantonness and maliciousness; plaintiff is only seeking to recover what it thinks (though erroneously) that defendant owes it. But at any rate, there is neither law nor jurisprudence in this state which allows a defendant to recover attorney’s fees for defending a civil suit. The reconventional demand was therefore properly rejected by the trial judge.
 

 Decree.
 

 The judgment appealed from is therefore affirmed.