[S. F. No. 16882. In Bank. Dec. 30, 1944.]

S. KULAWITZ, Respondent, v. THE PACIFIC WOODEN-WARE AND PAPER COMPANY (a Corporation), Appellant.

Fitzgerald, Abbott & Beardsley and Chas. A. Beardsley for Appellant.

George P. Marshall and Alfred Nelson for Respondent.

SHENK, J.—This is an appeal by the defendant from a judgment in its favor on a cross-complaint in an action in which the plaintiff sought the rescission of a lease.

The defendant leased store premises in a building owned by it in Oakland, to the plaintiff for a term of four years from July 1, 1938, at a minimum monthly rental of $350. The lease provided that the premises were to be used for the conduct of a general furniture business exclusively, and the lessee agreed not to allow any sale of property by auction on the premises except upon retiring from business. The defendant as lessor covenanted that during the term of the lease it would not let or permit occupation of any other space or storeroom in the same building "for the purpose of conducting therein a furniture store." The lease also provided that should the lessee abandon or vacate the premises during the term of the lease the lessor might at his option without notice to the lessee relet the premises, and the lessee should satisfy any deficiency between the amount realized from the reletting and the amount of the rents reserved.

The lessee took possession and conducted a general furniture business until January, 1941, when, because of illness, he became unable to give his personal attention to the business. He held an auction sale and retired from the conduct of the furniture business on the leased premises. He turned over the keys to the defendant's renting agent with instructions to find a tenant and if necessary at a rental of as much as $100 per month less than that provided in the lease. A tenant was not found. The plaintiff did not pay the rent for February, March or April, but prior to April 18, 1941, commenced to clean and restock the store in preparation for a reopening for business. While making these preparations he observed a sign on an adjoining store in the same building that it would open on May 1st for the sale of carpets, rugs and linoleum. On April 2d the defendant had let the adjoining store to one Smith on a month to month basis commencing May 1, 1941, for the specified purpose of conducting therein the "sale of linoleum and kindred products." On April 21st the plaintiff gave the lessor a telephonic notice of the claimed breach of the restrictive covenant in the lease, and on April 24th he served written notice that competition in the same building in the important items of "carpets, rugs and linoleum" would constitute a difference between a net profit and

a definite loss in his conduct of the furniture business in the same building; that the breach of the covenant went to the essence of the lease agreement; that he would no longer be bound by the provisions of the lease; and that since the telephonic communication of April 21st, he had removed his stock of furniture from and had given up the possession of the premises. On April 29th the lessor replied by letter stating that it denied any breach of the restrictive covenant; that the lessee had ''retired'' from the furniture business; that the claimed breach was a mere pretext, and that it would continue to hold the lessee to the performance of the lease provisions. The Smith tenancy for the sale of linoleum and kindred products continued and was in existence at the time of trial.

In October, 1941, the plaintiff filed his complaint for rescission. Various amended and supplemental cross-complaints were filed by the defendant by which it sought recovery of unpaid rentals for the full unexpired term. They will be referred to as the cross-complaint. By his answer to the cross-complaint the plaintiff admitted that rental was due to May 1, 1941, offered to pay the same, and alleged defensive matter to prevent the recovery of rentals for the remainder of the term by reason of his eviction from the leased premises by the defendant.

The trial court found the facts as above stated, and denied to the plaintiff any relief on his complaint. As to the issues raised by the cross-complaint and the plaintiff's answer thereto, the court concluded that the defendant had violated the restrictive covenant in a substantial respect, that the lease had terminated as of May 1, 1941, and that the defendant was entitled to recover only the unpaid rentals due to that date. The defendant had judgment accordingly.

On the appeal the defendant contends that the plaintiff was not entitled to a declaration that the lease had terminated and to be relieved of his obligation to pay rentals for the full term when he was himself in default in the payment of prior rental under the lease; that the plaintiff's ''retirement'' from the conduct of the furniture business on the leased premises in January, 1941, rendered the lessor's restrictive covenant inoperative; that before the defendant could be placed in default of the restrictive covenant it was entitled to reasonable notice to afford an opportunity to remove the source of the objection; and that the evidence does not support the finding of a substantial breach of the restrictive covenant.

■ The plaintiff, being in default under the lease, was not entitled to rescind without curing his default by tendering the amount due to the time of the claimed breach by the lessor. Breach of the restrictive covenant would not entitle the plaintiff to escape his obligation to pay that portion of the rentals which had accrued to the date of the alleged breach and which he was bound to pay. His notice was not accompanied by payment of that portion of the obligation which was incontrovertibly due. He therefore had not effected rescission of the lease and the trial court correctly concluded that he was not entitled to prevail on his complaint. (Civ. Code, § 1691; *Crouch* v. *Wilson*, 183 Cal. 576, 584 [191 P. 916]; *Couts* v. *Cornell*, 147 Cal. 560 [82 P. 194, 109 Am.St. Rep. 168].) The question of the correctness of the trial court's findings and conclusions is therefore resolved by a consideration of the issues raised by the defendant's cross-complaint and the plaintiff's answer thereto.

■ A covenant not to let other premises in the lessor's property or permit their use for certain purposes during the existence of the lease with the covenantee is binding and a breach thereof entitles the lessee to terminate the lease. (*Medico-Dental Bldg. Co.* v. *Horton & Converse*, 21 Cal.2d 411 [132 P.2d 457]; *University Club* v. *Deakin*, 265 Ill. 257 [106 N.E. 790, L.R.A. 1915C 854]; *Hiatt Inv. Co.* v. *Buehler*, 225 Mo.App. 151 [16 S.W.2d 219].) The result in such cases is based on the rule that the condition broken by the covenantor excuses performance by the covenantee. That rule applies ordinarily without the express intention of the parties, in cases of agreed exchange, such as *Cameron* v. *Burnham*, 146 Cal. 580 [80 P. 929], and *Rathbun* v. *Security Mfg. Co.*, 82 Cal.App. 793 [256 P. 296]. (See Rest., Contracts, §§ 266, 397; Cal. Ann., pp. 143, 226.) For historical or other reasons it was not made applicable to leases, unless by the intention of the parties, expressed or necessarily implied, performance by one was conditioned upon performance by the other. (See Rest., Contracts, § 290; Cal. Ann., pp. 155-156.) ■ Therefore breach or failure to perform by a party to a lease is not a defense unless the covenant broken was a condition precedent to performance by the party defending. (*Alderson* v. *Houston*, 154 Cal. 1 [96 P. 884]; Civ. Code, § 1439; 6 Cal.Jur. 489.)

■ In this case performance of the restrictive covenant

by the lessor was essential to the beneficial enjoyment of the property by the lessee for the purposes intended. It was therefore a condition precedent to the lessee's performance, and breach thereof may be said to amount to a constructive eviction of the lessee and was found to be such by the trial court. ▉ Any interference by the landlord by which the tenant is deprived of the beneficial enjoyment of the premises amounts to a constructive eviction if the tenant so elects and surrenders possession, and the tenant will not be liable for rentals for the portion of the term following his eviction. (*Veysey* v. *Moriyama,* 184 Cal. 802, 805 [195 P. 662, 20 A.L.R. 1363] ; *Agar* v. *Winslow,* 123 Cal. 587 [56 P. 422, 69 Am.St. Rep. 84] ; *McAlester* v. *Landers,* 70 Cal. 79 [11 P. 505] ; *Giraud* v. *Milovich,* 29 Cal.App.2d 543, 547 [85 P.2d 182].)

▉ . Default by the lessee in the payment of rentals does not waive the lessor's performance of the restrictive covenant unless the lease provides expressly or by necessary implication that performance thereof depends upon the payment of rentals. No such provision or intention appears from the agreement here involved. Under this lease the result flowing from the nonpayment of the rent gave to the lessor only the right to the rent or at his option to a termination of the lease. If he did not exercise the option the lease continued in existence. So long as the lease continued in existence the lessor was bound not to interfere with the beneficial enjoyment of the premises by the lessee for the purposes intended. Therefore upon the lessee's default in the payment of rent the lessor could at its option have terminated the lease; but as it elected to consider the lease in force it was bound to an observance of its covenant. (*Standard Livestock Co.* v. *Pentz,* 204 Cal. 618 [269 P. 645, 62 A.L.R. 1239].)

▉ The lessee's ''retirement'' sale in January, 1941, did not release the lessor from that covenant. The lease term was an estate in lands vested in the lessee. His ''retirement'' sale did not constitute a surrender nor an offer to surrender the leasehold. In fact the conduct of the parties indisputably showed their intention to consider the lease as continuing. The lessee sought to sublet the premises through the lessor's agent and to discharge his obligation for any deficiency in rentals. The lessor at all times unmistakably indicated its intention to treat the lease as in existence until the expiration of the stipulated term. There is no evidence of abandonment by the lessee by virtue of the ''retirement'' sale nor of ac-

ceptance of any such abandonment by the lessor. The lessee's title continued and he had a right to resume possession at any time until the expiration of the term, and the lessor had no right to interfere with his dominion and control. (*Welcome* v. *Hess*, 90 Cal. 507 [27 P. 369, 25 Am.St.Rep. 145].) The foregoing considerations render inapplicable cases such as *M. M. Ullman & Co.* v. *Levy*, 172 La. 79 [133 So. 369], where, on the lessor's sale of the goodwill of a business, his agreement not to engage in the same business in the vicinity for a specified number of years was held ineffective after the termination of the lease period and the tenant's retirement from business prior to the expiration of the agreed term of restraint.

■ The evidence in the present case is that the lessee surrendered possession of the premises when he gave to the lessor the notice dated April 24, 1941. Upon surrender of possession by the lessee before the expiration of the lease term, the lessor had three remedies: (1) To consider the lease as still in existence and sue for the unpaid rent as it became due for the unexpired portion of the term; (2) to treat the lease as terminated and retake possession for its own account; or (3) to retake possession for the lessee's account and relet the premises, holding the lessee for the difference between the lease rentals and what it was able in good faith to procure by reletting. (*Treff* v. *Gulko*, 214 Cal. 591, 598 [7 P.2d 697]; *Siller* v. *Dunn*, 103 Cal.App. 154, 158 [284 P. 232].) The defendant followed the first course. It filed a cross-complaint by which it sought to recover rentals unpaid to the expiration of the lease term. ■ It successfully resisted the plaintiff's claim of rescission inasmuch as the defendant's breach did not excuse the plaintiff's liability for rentals due prior thereto (Civ. Code, § 1511, subd. 3), and the plaintiff had failed to discharge his liability. ■ But the defendant's breach placed it in a position of being unable to resist successfully defensive matter interposed to its own action. It could not compel a performance which depended upon performance of its own broken covenant. When, upon the constructive eviction by the lessor, the lessee exercised his right to terminate the lease and surrender possession of the premises, the result was a constructive reentry by the landlord. All issues between the parties were thus set at rest with the exception of the single issue of the liability of the lessee for unpaid rentals to the date of reentry. (*State Guaranty Corp.* v.

*Richardson,* 9 Cal.App.2d 287, 289 [49 P.2d 606], citing *Welcome* v. *Hess, supra.*)

But, complains the defendant, the plaintiff has in effect received the relief sought by his complaint. This as a legal proposition is not so. In such a case the lessee has a choice of several remedies: he may rescind and become absolved from further payment of rentals; he may continue under the lease and sue for loss of profits; or he may treat the violation as putting an end to the lease for the purposes of performance and sue for damages. (*Medico-Dental Bldg. Co.* v. *Horton & Converse, supra,* at p. 434; *Hiatt Inv. Co.* v. *Buehler, supra,* 16 S.W.2d at p. 226. Here the plaintiff ineffectually sought the first named remedy. The fact that he failed to establish his right to rescission did not preclude him from any other relief that might be open to him. The rule that a party is not to be denied relief because he has mistaken his remedy is applicable in such a case. (*Agar* v. *Winslow, supra,* at p. 591.) The plaintiff may not be denied a lawful defense against an unjust claim for rentals because he misconceived his right to rescission. Here the court has merely given effect to the plaintiff's treatment of the lessor's violation of the restrictive covenant as putting an end to the lease for purposes of performance.

The defendant relies on *Medico-Dental Bldg. Co.* v. *Horton & Converse, supra,* and *Strong* v. *Morrison,* 87 Cal. App. 169 [261 P. 1051], as support for its contention that in any event the plaintiff was not entitled to terminate the lease without affording the defendant reasonable opportunity to remove the source of the objection. Neither of the cases relied on is controlling in favor of the defendant on the facts presented by this record. The defendant had notice from the plaintiff of the latter's intended action on account of the former's breach. That notice was given a sufficiently reasonable time in advance of the date of the commencement of the Smith tenancy to afford the defendant an opportunity to cancel that tenancy if it chose to do so, and thus place itself in a position to hold the plaintiff to his rental obligations. It did not follow that course, but preferred to deny the commission by it of any breach and to continue in force and collect the rentals under the month to month tenancy to Smith for purposes in violation of its lease with the plaintiff, and at the same time hold the plaintiff bound to his lease. This it could

not do. In neither of the cases relied upon did the landlord enter into a rental agreement with the prospective tenant which expressly provided for the competing use. In those cases the violation was not direct, but indirect by reason of the conduct of the competing tenant. The landlord in each of those cases was entitled to reasonable notice and time sufficient to enable it to acquire knowledge of the facts, to ascertain whether the condition could be corrected, and if possible to prevent a continued breach. In cases of direct breach, such as the present, the contention that notice and reasonable opportunity to comply with the terms of the covenant are necessary to put the lessor in default, has been rejected. (*Hiatt Inv. Co.* v. *Buehler, supra,* 16 S.W.2d at p. 227, and cases cited.) Moreover, the finality of the defendant's reply to the plaintiff's notice indicated that further opportunity would have availed nothing.

In its answer to the plaintiff's complaint the defendant affirmatively admitted that its covenant not to let any space in the same building for use as a furniture store was a material and essential part of the agreement and of the inducement and consideration therefore, without which the plaintiff would not have entered into the lease. Its contention, however, that the breach of the covenant was in an immaterial respect and that the plaintiff was not entitled to abandon the lease for such a trivial cause is not supported by the record. A breach of a covenant not to permit a similar sales business to be conducted occurs if but one of several classes of articles is permitted to be sold by the competitor. (*Medico-Dental Bldg. Co.* v. *Horton & Converse, supra; Pappadatos* v. *Market Street Building Corp.,* 130 Cal.App. 62 [19 P.2d 517] ; *Parker* v. *Levin,* 285 Mass. 125 [188 N.E. 502, 90 A.L.R. 1446, and note pp. 1449 et seq.].) The trial court found on sufficient evidence that linoleum and kindred products constituted a big item in the furniture business; that such products were sold at the plaintiff's furniture store, and that competition in that respect would result in serious losses to him.

This court said in *Medico-Dental Bldg. Co.* v. *Horton & Converse, supra,* at page 428, that in measuring the breach of such a covenant in a case where the objectionable competition is in connection with a business different from that of the lessee who is entitled to protection from the lessor,

technical subterfuges would be disregarded and the substance of the situation would determine the issue. Even considering the businesses here involved to be of such different character, the defendant's claim of pretext is not supported, in view of the trial court's findings on sufficient evidence that the sale of linoleum and kindred products constituted an important item in the furniture business and that the plaintiff was preparing to reopen his furniture store on the leased premises at the time of the defendant's breach. Here, as in the Horton & Converse case, the covenant was of such character that its contemplated breach would defeat the entire object of the lease, render further occupancy a matter of continued financial loss, and therefore in effect destroy the consideration for the lease. The sufficiency of the evidence in these respects, the surrender of the premises by the plaintiff following his notice to the defendant, the latter's immediate denial of the breach in response thereto and its refusal to take any action thereon except to hold the plaintiff to his lease and at the same time collect the rents from Smith, were justification under the law for the trial court's conclusion that the lease had been terminated. As was said in *University Club* v. *Deakin, supra,* 106 N.E. at page 792, if the lessor chose to ignore the provision of the contract it did so at the risk of the lessee's exercising his right to terminate the lease and surrender possession of the premises.

Other contentions of the parties need not be discussed.

The judgment is affirmed.

Gibson, C. J., Curtis, J., and Edmonds, J., concurred.

CARTER, J.—I concur in the judgment of affirmance, however, I believe that our decision should properly be based upon the doctrine of surrender or surrender by operation of law as that term is used in the law of landlord and tenant. A surrender is the yielding up of an estate for years to the landlord. (*Triest & Co.* v. *Goldstone,* 173 Cal. 240 [159 P. 715] ; *Welcome* v. *Hess,* 90 Cal. 507 [27 P. 369, 25 Am.St.Rep. 145].) It may arise by express agreement between the landlord and tenant or by operation of law. (*Steel* v. *Thompson,* 59 Cal.App. 191 [210 P. 430] ; *Rauer's Law etc. Co.* v. *Third St. I. Co.,* 21 Cal.App. 183 [131 P. 77].) The latter is not, strictly speaking, a surrender wholly by operation of law,

inasmuch as it is based upon the conduct of the parties indicating a surrender, and from which the court draws the legal conclusion that the surrender has taken place. Even in a so-called surrender by operation of law the issue is largely one of fact for the trier of fact. (*Triest & Co.* v. *Goldstone, supra; Steel* v. *Thompson, supra; Strei* v. *Brooks,* 95 Cal.App. 589 [273 P. 145]; *Rognier* v. *Harnett,* 45 Cal.App.2d 570 [114 P.2d 654].) In the ordinary case two things must occur to establish a completed surrender: (1) The abandonment of the leased premises by the tenant; and (2) an acceptance of the abandonment by the landlord. (See *Welcome* v. *Hess, supra; Voss* v. *Levi,* 33 Cal.App. 671 [166 P. 359]; *Bonetti* v. *Treat,* 91 Cal. 223 [27 P. 612, 14 L.R.A. 151]; *In re Bell,* 85 Cal. 119 [24 P. 633]; *Anheuser-Busch Brewing Assn.* v. *American P. Co.,* 59 Cal.App. 718 [211 P. 817]; 260 *Seaman Ave. Corp.* v. *Armstrong,* 130 Cal.App. 612 [20 P.2d 715]; *Salvation Army* v. *Daily Telegram,* 125 Cal.App. 743 [14 P.2d 123]; *Neuhaus* v. *Norgard,* 140 Cal.App. 735 [35 P.2d 1039].) The effect of a completed surrender is to terminate the tenancy, to release the tenant from the payment of future rent and to accomplish a mutual rescission of the lease, but he is liable for rent accruing before the surrender is complete. (See *Gaskill* v. *Trainer,* 3 Cal. 334; *McDermott* v. *Burke,* 16 Cal. 580; *Baker* v. *Eilers Music Co.,* 26 Cal.App. 371 [146 P. 1056]; *Donnellan* v. *Wood, Curtis & Co.,* 4 Cal.App. 192 [87 P. 235]; *Costello* v. *Martin Brothers,* 74 Cal.App. 782 [241 P. 588]; *Guiras* v. *Harry H. Culver & Co.,* 109 Cal.App. 743 [293 P. 705]; *Moskovitz* v. *LeFrancois,* 121 Cal.App. 310 [8 P.2d 1049].)

In the instant case the court found upon sufficient evidence that the tenant abandoned the premises. It is immaterial whether the abandonment occurred in January when he sold his business at auction, vacated the property and ceased to pay rent, or in April when he heard that the landlord was leasing property in the same building to one Smith to engage in a similar business. Both occurred before May 1, 1941, when the landlord gave possession of the adjoining premises to Smith. Hence, the first requirement of a surrender, abandonment by the tenant, unquestionably occurred. Up to May 1st the landlord had assumed the position of following the first course leading to the various remedies stated to be available to him in *Phillips-Hollman, Inc.* v. *Peerless Stages, Inc.,* 210 Cal. 253, 258 [291 P. 178]:

"The rule is well settled that *where a lease has been repudiated by a tenant, and the premises abandoned,* and there are no covenants in the lease to the contrary, the landlord has a choice of but two remedies:

"1. He may *rest upon his contract* and sue for each installment of rent as it falls due. If this alternative be selected, obviously the action must be limited to accrued installments, and no recovery can be had for future installments, because, the lease being still in existence, no obligation to pay the rent arises until each installment falls due.

"2. He may take possession of the premises, relet the same and recover from the tenant any damages suffered thereby. Such damages will be the difference between the amount secured on the reletting and the amount provided for in the original lease." (Italics added.)

The question thus arises as to whether the second requisite of a surrender, that is, acceptance of the abandonment by the landlord, has been established. In that connection the principle that that question is one of fact should not be ignored. Here the trial court found that there was such an acceptance. The chief act by the landlord which has been considered as an acceptance by him is a reentry and assumption of complete possession by him. Other conduct has been given a like effect. It is said in 15 California Jurisprudence 793:

"Under the rule just stated, a surrender by operation of law arises where a new lease is accepted by a tenant, where a lease is given to a third person, where a landlord resumes possession with the acquiescence of the tenant, or *where the landlord does any act amounting to an eviction.* Where a lessee is unable to gain possession because of the refusal of third persons, also claiming as lessees, to deliver it, and the landlord then authorizes the lessee to prosecute ejectment in the landlord's name to secure possession, an abandonment of the lease by mutual consent will be inferred, and it cannot be availed of by the third person as a defense. . . . While a tenant of premises for a term cannot divest himself of his right to possession or terminate his liability for the stipulated rent therefor by a mere abandonment of the premises without the consent of the lessor, a resumption of possession of the premises by a landlord with the acquiescence of a tenant amounts to a surrender of a leasehold by operation of law. A mere statement by the lessor to the lessee that he may move out if he desires, does not become of binding effect in terminat-

ing the leasehold until a surrender and acceptance of possession have actually been made. Nor are the mere delivery of the keys of the premises to the lessor and their retention sufficient to effect a surrender by operation of law, unless that appears to be the intention of both parties. An acquiescence in the surrender or abandonment of the premises is perhaps best evidenced by the lessor's taking possession of the property and assuming over it again all the authority of an owner in possession.'' (Italics added.) But those are not the only acts which may constitute an acceptance. The general test is as stated in 32 American Jurisprudence, Landlord & Tenant, section 901:

''A surrender of demised premises occurs only through the consent or agreement of the parties evidenced either by an express agreement or by an unequivocal act *inconsistent with the terms of the lease and with the relation of landlord and tenant, or by acts so inconsistent with the terms of the lease as to imply in law an agreement to surrender,* and hence, an acceptance by the landlord is requisite.'' (Italics added.) And, as expressed in the quotation from California Jurisprudence, any act amounting to an eviction is sufficient. The landlord's covenant in the instant case, not to permit any space in the same building to be used for a furniture store, if it has been violated by the lessor, if that covenant goes to the heart of the lease, if its violation is inconsistent with the terms of the lease and the relation of landlord and tenant, or if it amounts to an eviction, then the breach of it would show an acceptance of the abandonment and a completed surrender. That is true because, if the landlord chooses, as he does here, to rely upon the lease and recover the rent, he must not do anything to interfere with the tenant's rights thereunder. It would not be doubted that if the landlord demolished the building on the premises there would be an acceptance of the abandonment. The remodeling of a building and making extensive repairs thereon has been considered an acceptance by the landlord of the tenant's abandonment. (32 Am.Jur., Landlord & Tenant, § 907.) The violation of the covenant here in question is an act which constitutes an acceptance; at least it is sufficient from which the trial court could have implied an acceptance and surrender. That is true because this court has held that such a covenant goes to the essence of the lease, that the covenant to pay rent is dependent upon the continued

observance of it. In *Medico-Dental Bldg. Co.* v. *Horton & Converse,* 21 Cal.2d 411, 418 [132 P.2d 457], this court in dealing with such a covenant stated:

"It is plaintiff's position that a lease is a conveyance as distinguished from a contract, so that any covenant on the part of the lessor is independent of the lessee's obligation to pay rent and each party has his remedy for breach of covenant in an action for damages. While it is true that a lease is primarily a conveyance in that it transfers an estate to the lessee, it also presents the aspect of a contract. (Pollock on Contracts, Third Am. Ed., p. 531.) . . . Thus, the parties recognized in plain terms the essential interdependence of their obligations.

"It is an established rule that those covenants which run to the *entire consideration of a contract are mutual and dependent. . . . Undoubtedly the restrictive covenant in defendant's lease was of such a nature. . . .* The correlation of these facts with the express provisions of the lease above noted compels the conclusion that the restrictive covenant *was not incidental or subordinate to the main object of the lease, but went to the whole of the consideration, and that as such it must be deemed a dependent covenant. . . .* But where, as here, the covenant of the lessor is of such character that *its breach will defeat the entire object of the lessee in entering into the lease, such as rendering his further occupancy of the premises a source of continuing financial loss* incapable of satisfactory measurement in damages, it must be held that the covenant goes to the root of the consideration for the lease upon the lessee's part." (Italics added.) There can, therefore, be no escape from the proposition that the entire purpose of the lease has failed because of the landlord's breach of the covenant and it is as much an acceptance of the tenant's abandonment, and hence a surrender, as a demolition of a portion of the premises. Moreover, since any act which would constitute an eviction of the tenant by the landlord will constitute an acceptance of the tenant's abandonment. (*Triest & Co.* v. *Goldstone, supra; Welcome* v. *Hess, supra*), if the breach of the covenant in question is an eviction, we have an acceptance. That it is an eviction follows from the rule that: "If, for example, the landlord, after vacating premises to the plaintiff, rents adjoining premises or a part of the same premises to other tenants for the conduct of a business or for other purposes naturally destructive of the plaintiff's business or his

beneficial enjoyment of his premises, the latter may claim a constructive eviction." (32 Am.Jur., Landlord & Tenant, § 263.) Inasmuch as the tenant's rights are as above outlined there is no question about his being entitled to a declaration that the lease is cancelled. Assuming that is an equitable remedy he cannot be deprived thereof because he was in default since the act of the landlord completed a surrender upon which he could lawfully rely.

The clause in the lease that upon default in the payment of rent "the lessor may, at his option and without notice to lessee, relet the same for such rent and upon such terms as he may see fit," and lessee agrees to pay any deficiency, does not affect the foregoing conclusions for many reasons. It is not a situation where the lessor having the power to relet has any superior power embraced therein including the power to rent premises in the same building to be used for a furniture business. To so reason would give to that clause a right on the part of the lessor to breach the covenant against renting to a competing business. Obviously, that is not the purpose of that clause. It is merely a method of mitigating the damages which may be followed by the lessor if he chooses. *Here he has not chosen to follow it. He has not and does not purport to exercise that right. On the contrary he maintains that his conduct did not constitute a breach of the competitive business covenant.* How can it be said that he is pursuing that right when *the facts are all to the contrary?* The lessor by availing himself of the right under that clause is not the only one to benefit. The lessee also may well benefit because the recovery against him would be reduced from the full agreed rental to the difference between the agreed rental and that obtained on a reletting.

Suppose the lessor instead of breaching the competing business covenant had gone into possession himself or demolished, remodeled, or sold the premises. Certainly the lessee could successfully assert an acceptance of his abandonment. The lessor could not escape the effect of such conduct on the pretext that he was *reletting* the premises, because obviously he was not. His acts speak louder than his assertions. Likewise, in the instant case the lessor's breach of the covenant against competition is wholly irreconcilable with a reletting on behalf of the tenant. If there is a reletting it should be under the same conditions, that is, with no competing business in the same building, as under the lease. Another way of stating the

matter might be to say that the lessor by breaching the cove-
nant against a competing business or assuming possession of
the premises or remodeling them, *exceeded his authority under
the reletting clause of the lease resulting in a surrender.* In
*Siller* v. *Dunn,* 103 Cal.App. 154 [284 P. 232], the lease con-
tained a reletting clause. The lessee abandoned the premises.
The court states at page 155:

"Notwithstanding this provision in the lease [the right of
the lessor to relet], it is the contention on the part of the de-
fendants [lessees] that the testimony of the plaintiff [lessor]
established beyond question that by his own acts he had ac-
cepted a surrender of the lease, had repossessed himself of
the premises in his own right and for his own uses and pur-
poses, and had by operation of law released the defendants
from further liability for the payment of rent. The lease in
question provided a certain stipulated rental and also speci-
fied the purposes for which the premises were to be used, to ·
wit, as a furniture and furnishing goods store, and that no
other or different use of the said premises be made by the
lessee without the written consent of the lessor first had and
obtained. . . . On or about the eighth day of August, 1927,
the Dunn-Brett Furniture Company delivered to the plaintiff
the key to the premises described in the lease, and at the time
of the delivery of the key the plaintiff handed to the president
of the corporation a notice to the effect that he would still hold
the corporation liable for rent until the premises were re-
leased. It is further shown by the testimony that prior to the
surrender of the premises by the Furniture Company and the
delivery of the key to the premises to the plaintiff, the plain-
tiff had for about three months made some effort to find an-
other tenant for the premises, the plaintiff having been in-
formed by the officers of the Furniture Company that the
business of the company was in failing circumstances and that
the company would not be able long to continue in business.
There does not appear to be any testimony in the transcript
to the effect that the plaintiff made any effort to obtain a
tenant for the premises after the surrender thereof by the
Furniture Company on the eighth day of August, 1927, or
during any of the time for which judgment is asked in this
case on account of rentals alleged to be due, nor does the testi-
mony show that the efforts were by the plaintiff to relet the
premises, or upon what terms they were offered, but from

matters hereinafter referred to we do not deem this material. The testimony shows that at or about the time the Furniture Company gave up the key to the premises, the plaintiff put into execution an idea or thought that he had entertained in relation to converting the premises into an hotel. His language was, 'to throw it into an hotel so we could rent it.' It further appears from the transcript that on or about the seventeenth day of August, 1927, the plaintiff began the remodeling of the six-story building herein referred to so as to make it available for hotel purposes, and that this remodeling was finished on or about the fifteenth day of February, 1928. The period of time for which the plaintiff claims rent being from the date when the defendant surrendered the premises up to the fifteenth day of February, 1928, when the same were ready for occupancy for hotel purposes. It further appears from the transcript that the cost of remodeling the premises was somewhere between fifty and sixty thousand dollars; that the work of remodeling required approximately six months. The plaintiff's testimony is to the effect that during the time of remodeling the premises it would have been impossible for any tenant to have taken possession thereof. . . . It does not appear to be questioned that the remodeling of the building does not come within the terms of repairs mentioned in the lease, nor does it appear to be questioned that the character of the remodeling of the building precluded the possibility of its being used as a furniture and furnishing store. Upon the testimony of the plaintiff showing that the remodeling of the building was not in the nature of repairs, was such as to preclude the further use of the premises for the purposes mentioned in the lease, and *that the plaintiff intended to and did take possession of the premises for the purposes of converting them to a different use from that mentioned in the lease, and was doing so not for the benefit of the lessee, but for and on his own account, a nonsuit was granted.* . . . We think the testimony is conclusive that the *plaintiff took possession of the premises solely as owner in his own right and not in the furtherance of any of the covenants of the lease,* and that it was in execution of a plan to convert the premises into an hotel and change its uses entirely from that limited in the lease.

"The law seems to be pretty well settled that upon the surrender of leased premises by a lessee before the expiration of

the term provided for in the lease, the owner of the premises has three remedies; first, he may do nothing and sue the lessee as each installment of rent becomes due, or for the whole thereof when it becomes due; second, he may treat the lease as terminated and retake possession of the premises and use the same for his own purposes as the exclusive owner thereof; or, third, he may retake possession of the premises for the tenant's account and hold the tenant in damages for the difference between the rentals provided for in the lease and what, in good faith, he was able to procure from a reletting. Only one question is involved upon this appeal, and that is, notwithstanding the clause in the lease which we have quoted, the plaintiff abandoned the lease and by his actions is now estopped to maintain this action.

"In the case of *Welcome* v. *Hess*, 90 Cal. 507 [25 Am.St.Rep. 145, 27 P. 369], it was held (quoting from the syllabus) that 'where tenants leased a building for a term of years as a store, and abandoned the premises after one year's occupation thereof, sending the keys to the landlord, the acts of the landlord in taking possession of the premises, and reletting them for a period longer than the remainder of the term, without notifying the original lessees that he should so do on their account, and without notifying them that he should continue to hold them liable for the rent, show an acceptance by the landlord of the surrender, and he is estopped from denying it.' The opinion in that case shows what the landlord may do, as we have hereinbefore stated. It also shows that during the unexpired portion of the term of the lease *the lessee has a right to resume possession of the premises unless the landlord has done something which is equivalent to the acceptance of a surrender of the lease. . . .* In *Bernard* v. *Renard,* 175 Cal. 230 [3 A.L.R. 1076, 165 P. 6941], it is held (quoting from the syllabus in 3 A.L.R.) : 'An acceptance of a surrender of a lease will be effective if, after the lessee's refusal to take possession or be bound by the lease, the lessor resumes absolute control of the property and attempts to let it without any notice to the lessee that he is not acting in his own right.' In *Voss* v. *Levi,* 33 Cal.App. 671 [166 P. 359], the court, in its opinion, used the following language: 'Such acceptance of surrender was evidenced only at the time the plaintiff, on the 19th day of January, 1915, took possession of the premises and proceeded to have them remodeled. That an acceptance of

surrender was then completely had, we have no doubt.' In *Rehkopf* v. *Wirz*, 31 Cal.App. 695 [161 P. 285, 286], in considering the question of the acceptance of a surrender of a lease, it is said, referring to the right of the lessor to relet the premises and hold the tenant liable: 'But a lessor who chooses to follow that course must in some manner give the lessee information that he is accepting such possession for the benefit of the tenant, and not in his own right and for his own benefit. If the lessor takes possession of property delivered to him by his tenant and does so unqualifiedly, he thereby releases the tenant.' (Citing a number of authorities.) And further: 'An unqualified taking of possession by the lessor and reletting of the premises by him as owner to new tenants is inconsistent with the continuing forces of the original lease. . . . If done pursuant to the tenant's attempted abandonment, it is an acceptance of the surrender and likewise releases the tenant.' There can be no difference in principle between the acts referred to in this case, which amounts to a release of the tenant, and the circumstances shown by the evidence upon the record in this case. *The remodeling of the premises by the owner cannot be held to be anything other than a taking of possession of the premises exclusively by the landlord or owner for his own uses and purposes as such owner.* As we have stated, the testimony in this case shows that the premises were rendered wholly untenantable during the period for which rent is claimed, and also that the premises have been rendered wholly unusable for the purposes mentioned in the lease to the Furniture Company.

"In the case of *Meeker* v. *Spalsbury et al.*, 66 N.J.L. 60 [48 A. 1026], the court, in considering a lease having in it a provision relative to repairs similar to the one under consideration, and where it was claimed that a surrender had been accepted by operation of law, used the following language: 'He (referring to the landlord) was to have the right to enter and make such repairs as should be necessary for the preservation of the premises. When the plaintiff *did more than that,* he conclusively evidenced his intention to hold possession on his own account, thereby accepting the tenants' abandonment as a surrender.' The case of *Meeker* v. *Spalsbury, supra,* is referred to and approved in the case of *Fink* v. *Browe Co.,* (N. J.Ch.) 99 A. 926. To the same effect in principle is the case of *In re Schomaker Piano Forte Mfg. Co.,* 163 F. 413. In 15

California Jurisprudence, 797, section 214, the rule is stated that making material alterations in the leased premises amounts to an acceptance of the abandonment of the premises by the lessee. We do not deem it necessary to cite or quote from other authorities, as the foregoing show the rule well settled that when the landlord remodels premises so as to make them unavailable for the purposes for which they were leased, and also renders them untenantable during the period of remodeling, that rent for such period cannot be collected, for the reason that acceptance of the surrender of the lease will be inferred as a matter of law, and the landlord estopped from asserting the contrary. The respondents do not question the contention of the appellant that a clause in a lease, such as we have set forth herein, will be upheld where the parties have acted consistently therewith, but only contend that the plaintiff's evidence conclusively establishes that his acts were not consistent therewith, and that by his taking unqualifiedly possession of the premises, and as he says, practically dismantling five of the floors thereof and remodeling the building so as to fit it for an entirely different use and purpose, establishes beyond controversy in law an acceptance of the abandonment of the lease.'' (Italics added.) Likewise, in the instant case the lessor has done more than relet the premises (he has not done that at all) he has committed an act which is unequivocally opposed to the continuance of the lease. (See, also, *State Guaranty Corp.* v. *Richardson,* 9 Cal.App.2d 287 [49 P.2d 606] ; *In re Goldburg's Estate,* 148 Misc. 607 [266 N.Y.S. 106] ; *Bonsignore* v. *Koondel,* 134 Misc. 344 [235 N.Y.S. 453] ; *First Stamford Nat. Bank & Trust Co.* v. *Pierce,* 161 Misc. 756 [293 N.Y.S. 75].)

For the foregoing reasons the judgment should be affirmed.

SCHAUER, J.—I dissent. The majority opinion, in my view, transgresses fundamental rules of both law and equity. It sets a precedent which certainly is potentially inimical to the interests of every owner of income property in California of a class similar to that here involved and, by reason of the character of the rules which are breached, may well affect other types of income property. Briefly, the majority opinion grants equitable relief—full release from the executory obligation to pay rent, evidenced by a written lease— to a defaulting tenant who had abandoned the leased premises, had failed to pay the rent, and had unconditionally renounced

his obligations under the lease while the lessor was in no way in default.

The grounds upon which the majority place their conclusion are: (1) that the lessor breached a restrictive covenant to protect the lessee against competition in the same building by renting an adjoining store in that building for a somewhat similar business *after the lessee had retired from his business, had ceased paying rent, and had abandoned the premises,* and (2) that by so renting the adjoining store the lessor either constructively evicted the tenant or accepted his abandonment of the lease and released him from his obligations thereunder.

The majority opinion in words concedes that ''The plaintiff, being in default under the lease, was not entitled to rescind without curing his default by tendering the amount due to the time of the claimed breach by the lessor. . . . He therefore had not effected rescission of the lease and the trial court correctly concluded that he was not entitled to prevail on his complaint.'' But having made such concession it proceeds to completely disregard the effect of it. The majority say that ''The question of the correctness of the trial court's findings and conclusions [for the plaintiff] is therefore resolved by a consideration of the issues raised by the defendant's cross-complaint and the plaintiff's answer thereto.'' This seems to me to be but a quibble in that the controlling issues ''raised by the defendant's cross-complaint and the plaintiff's answer thereto'' are precisely the same as those raised by the complaint and answer. In fact the plaintiff's answer to the cross-complaint *incorporates therein all the allegations of his complaint and the relief granted him by the judgment is, as far as it goes, precisely the relief sought in his complaint.* To hold that ''the trial court correctly concluded that he was not entitled to prevail on his complaint'' but that he was entitled to prevail on his answer to the cross-complaint begs the question. As previously stated the only relief awarded him by the judgment is that sought in the complaint.

As to the suggestion that the lessor constructively evicted the tenant after the tenant had previously abandoned the premises and unconditionally renounced his obligations under the lease, it seems to me that the very statement of the proposition sufficiently exposes its infirmity. How can a tenant be evicted from that which he has already abandoned? And the contention that defendant accepted the tenant's

abandonment of the premises and released him from his obligations under the lease by renting an adjoining store for a somewhat similar business *after the tenant had ceased doing business and had abandoned the premises and renounced his obligations,* seems likewise devoid of merit in law and justice, as hereinafter discussed more fully.

In order that there may be no misapprehension or uncertainty as to the precise facts involved it seems necessary to relate them with particularity. This is a suit in equity by a lessee to rescind or terminate a written lease of a portion of a store building. The demised premises had been used to house a furniture store. The so-called rescission is sought upon the ground that the defendant lessor breached a restrictive covenant not to "permit any space . . . in the same building . . . to be used or occupied for the purpose of conducting therein a furniture store without the consent in writing of the Lessee first had and obtained." Defendant answered and cross-complained for delinquent rent and attorney's fees and plaintiff, by way of answer (amended) to the cross-complaint and as an equitable defense thereto, incorporated in such answer all the allegations of his complaint and in addition alleged "that on or about the first day of February, 1941 plaintiff abandoned the lease alleged in the complaint . . . and thereupon abandoned the premises described in said lease and that on the first day of May, 1941 cross complainant accepted said abandonment of said lease and of said premises; and by said acceptance of said abandonment all liability of plaintiff under said lease ceased except as heretofore admitted by plaintiff." The admissions referred to (not wholly consistent as to dates with the allegations above quoted) contain an express concession by the plaintiff that he had not paid the rent accruing February 1, 1941, or subsequent thereto and also that he *owed* the rent accruing up to *April 18, 1941.* In such answer to the cross-complaint plaintiff further alleged that he "offers to pay the same," referring to the admittedly due rent, but denied that he owed, and admitted that he *refused to pay, any rent for any period of time subsequent to April 18, 1941;* and alleged also "that on or about the first day of May, 1941 defendant and cross complainant evicted plaintiff from the premises . . . and thereby terminated all liability of plaintiff to cross complainant except as hereinbefore admitted."

The trial court made findings of fact, which will be more particularly noted hereinafter, and gave judgment substantially as prayed in plaintiff's complaint and affirmative answer to cross-complaint, decreeing that "the lease referred to in plaintiff's complaint between plaintiff and defendant was terminated on the first day of May, 1941," and awarding defendant only the rent accruing "for the months of February, March and April of 1941, together with legal interest," $300 attorney's fees and costs. Defendant appeals, specifying that its appeal is taken from those portions of the judgment decreeing the termination of the lease, denying recovery of rent accruing on and subsequent to May 1, 1941, and limiting recovery of attorney's fees to the sum of $300. It is my conclusion, for the reasons hereinafter set forth, that the appeal is well taken.

The majority rely, for affirmance of the judgment, primarily upon an asserted breach of the restrictive covenant above quoted. Such covenants (to protect a lessee against competition) are valid and a substantial and material breach thereof, persisted in by the lessor after reasonable notice and demand for discontinuance, will justify the lessee in "rescinding" (terminating) the lease and will relieve him from further obligation thereunder. (*Medico-Dental Bldg. Co.* v. *Horton & Converse* (1942), 21 Cal.2d 411 [132 P.2d 457].) This rule is based upon the proposition that covenants "not to lease" and "to pay rent" are mutually dependent (*ibid.*, pp. 418-419). If these covenants are truly mutually dependent it is obvious that a party in default on his own obligation has no right to demand performance of the correlative obligation. By the same token that a lessor who has first breached substantially a restrictive covenant may not require a lessee (who elects to vacate the premises) to pay rent, so likewise is it true that a lessee who first defaults and refuses to pay rent may not require performance of the restrictive covenant. The principle underlying this proposition is applied to matters of law (see Civ. Code, §§ 1439 and 1440, hereinafter quoted and discussed) and it has even more basic and universal application where equitable relief is sought. Equity will not "aid him who is guilty of breach of contract connected with the transaction concerning which he asks for a decree in his favor." (*De Garmo* v. *Goldman* (1942), 19 Cal.2d 755, 764 [123 P.2d 1]; *Harrison* v. *Woodward* (1909),

11 Cal.App. 15, 24 [103 P. 933].) The admissions and averments of the plaintiff in his pleadings, the findings of the trial court, and the evidence all unite to bring this case within the operation of the rule stated.

The record discloses that the lease between plaintiff and defendant was executed on June 20, 1938. By it defendant demised to plaintiff for a term of four years a storeroom in a building in Oakland to be used as a furniture store. The lessee covenanted to pay "the total rent or sum of $15000.00 plus 5% of the gross sales·price of all merchandise sold in said premises and also on sales originating in said premises but consummated elsewhere, in excess of $90,000.00 annually." Provision was made for the payment of the rent in installments; the lessee agreed *"not . . . to allow any sale of property by auction, except upon retiring from business,* on said premises, . . . that in the event said Lessor shall bring action at law against said Lessee to enforce the payment of any rent due or to enforce any of the terms or conditions hereof . . . then said Lessee agrees to pay to said Lessor attorney fees adjudged reasonable by the court . . . and . . . should the Lessee abandon *or vacate* said premises during the term of this lease, the Lessor may, at his option and without notice to Lessee, relet the same for such rent and upon such terms as he may see fit and . . . Lessee agrees to satisfy and pay any deficiency and to pay the expense of such reletting and collecting." (Italics added.) The only covenant upon the part of the defendant lessor which is material here is the previously mentioned one whereby it agreed that it would "not during the term of this lease . . . permit any space or store room in the same building . . . to be used or occupied for the purpose of conducting therein a furniture store without the consent in writing of the Lessee first had and obtained."

The trial court found the facts as to execution of the lease and entry into possession by plaintiff; "that in the month of January, 1941 plaintiff did retire from said furniture business on said premises and plaintiff did in and during said month of January, 1941 hold a public auction in said premises at which auction plaintiff sold and disposed of all plaintiff's furniture and personal property connected with the plaintiff's said furniture business on said premises and thereafter plaintiff discontinued his said furniture business on said premises;

that plaintiff failed to pay the rent of said premises provided in said lease to be paid February first 1941 and plaintiff has paid none of the rent provided in said lease to be paid each month during the life of said lease following said first day of *of* February, 1941; that after holding said auction and on the first day of February, 1941 plaintiff abandoned said leasehold and the premises described in said lease.''

The court further found that the restrictive covenant was ''a material and essential part of said lease. . . . That plaintiff did not at any time, in writing or otherwise, consent that any space . . . be used or occupied by any other tenant . . . for the purpose of conducting therein a furniture store; that on the 1st day of May, 1941 defendant rented a store in said building to William Smith for the purpose of selling linoleum and kindred products therein; . . . that on the said first day of May, 1941 said Smith entered the store . . . and commenced the sale of linoleum and kindred products therein and has continuously thereafter, to and including the trial of this action, persisted in the advertising and sale to the general public of linoleum and kindred products from said store . . .; that by said renting to said Smith said defendant on the first day of May, 1941 accepted the abandonment by plaintiff of the premises leased to plaintiff under the terms of said lease and evicted plaintiff therefrom; that during the latter part of March, 1941 and the early part of April, 1941 plaintiff did undertake to commence the reestablishment of his furniture business in the premises described in said lease *but plaintiff did on the 18th day of April, 1941 abandon said premises* leased to plaintiff upon receiving information that Smith was to use said adjoining store in said building for the same of linoleum and kindred products. . . . *that it is true that by conducting an auction in January of 1941 plaintiff did give notice to the defendant that plaintiff was retiring from business and discontinuing the conduct of a furniture store in the leased premises,* but prior to the granting to said William Smith of any right to possession of said store . . . and during the latter part of March, 1941, plaintiff was engaged in reestablishing the furniture business of plaintiff in the premises . . .; that said lease was terminated May 1, 1941 and it is true that defendant violated the covenant of quiet enjoyment and evicted plaintiff on said first day of May 1941 and did on said first day of May, 1941 accept the

abandonment by plaintiff of the premises.'' (Italics added.)

This suit was commenced on October 18, 1941, at which time plaintiff was in arrears on the rent, if his obligation under the lease was not terminated, in the sum of $3,150. In any event he admitted that he owed, and that there was due and payable to defendant, the rent which accrued on February 1, March 1, and on April 1, for the period up to April 18, 1941. As to rent for any period of time subsequent to April 18, plaintiff alleged in his amended answer to the cross-complaint that ''no rent and no installment of rent mentioned in said lease is payable or unpaid or owing . . . for any period of time following April 18, 1941.'' Paragraph III of the defendant's cross-complaint pleads the rent reserved under the lease and specifically alleges that plaintiff ''refused to pay said rent or any part thereof accruing on February 1, 1941, or at any time thereafter.'' Plaintiff's answer to this allegation is as follows: ''Answering paragraph III of said cross-complaint, plaintiff admits the allegations therein contained save and except that plaintiff's *refusal to pay rent* dates from April 18, 1941 and not February 1, 1941, as alleged therein.'' (Italics added.) It thus becomes apparent that plaintiff unconditionally refused to pay any rent for any period of time subsequent to April 18, 1941. Under these circumstances he was not entitled to the aid of equity to relieve him from the obligation which he had unequivocally renounced unless a right to renounce it had already matured on April 18, 1941. In this connection it will also be remembered that the trial court found that ''plaintiff did on the 18th day of April, 1941 abandon said premises leased to plaintiff upon receiving information that Smith was to use said adjoining store in said building for the same of linoleum and kindred products.''

The tenancy of Smith, which was negotiated during the early part of the month of April, was to commence on May 1, and was on a month to month basis. It could have been terminated by the defendant at any time on not more than one month's notice to Smith. At the time plaintiff learned of the plan to rent the store to Smith he (plaintiff) was not actually conducting a furniture business. He had retired from that business. There is no finding, and no evidence in the record which would support a finding, that plaintiff notified defendant that he was contemplating or preparing reestab-

lishment of the furniture business. He did not at any time demand that defendant desist from the plan to rent the adjoining store to Smith. He abandoned the premises on April 18, according to the finding of the trial court, and *thereafter* gave notice of unequivocal renouncement of his obligations under the lease. His notice reads, "lessee hereby gives notice that he will no longer be bound to the provisions of the lease on his part to be performed; that since telephonic notification to you of the foregoing, given April 21, 1941, lessee has moved his stock of furniture from, and has given up possession of, the said premises."

It indisputably appears from the foregoing recital that plaintiff lessee undertook to absolutely and finally terminate the lease without previous notice to the lessor, without curing his own prior and continuing default, without an offer to pay the overdue rent and in the face of his unconditional refusal to pay rent. He was not actually engaged in the furniture business in April, 1941. He had retired from that business in the preceding January. He was not then in a position where he could complain of competition in a similar business. (See *Medico-Dental Bldg. Co.* v. *Horton & Converse* (1942), *supra,* 21 Cal.2d 411, 428 [132 P.2d 457].) The defendant lessor had notice that plaintiff had retired from the furniture business; it apparently was not given notice at any time prior to the trial of the suit (at least not prior to plaintiff's abandonment of the premises and unconditional renouncement of his obligations under the lease) that plaintiff had ever formed an intention to reestablish a furniture business in the leased premises. The amended answer to the cross-complaint upon which the suit went to trial contains plaintiff's sworn declaration, twice repeated, "that this cross defendant did on or about *the first day of February 1941* abandon the lease alleged in the complaint . . . and referred to in cross complainant's said Cross Complaint and thereupon abandoned the premises described in said lease and that on the first day of May, 1941 cross complainant accepted said abandonment." (Italics added.) The plaintiff's pleadings contain no suggestion that he ever contemplated, or notified defendant that he contemplated, reestablishing a furniture business in the leased premises.

The discontinuance of plaintiff's business was a matter of concern to defendant. The lease called for a stated cash

consideration to be paid defendant lessor "plus 5% of the gross sales price of all merchandise sold in said premises . . . in excess of $90,000.00 annually." Such lease also authorized the lessor, in the event that lessee "should . . . abandon *or vacate* said premises during the term of this lease," to relet the premises *without notice to lessee.* Certainly under such circumstances the lessor had a right to rent the adjoining storeroom to Smith on a month to month basis for the conduct of any lawful business.

The finding that plaintiff did "undertake to commence" the reestablishment of a furniture business in the premises in the absence of a finding that defendant had notice or knowledge of such intention or undertaking is immaterial and is insufficient upon which to predicate the equitable relief releasing him from his obligation to pay the contracted rent. He did not perform the obligations upon his part to be performed and he did not offer to perform them. On the contrary he unconditionally renounced his obligations while he was in default. Under no heretofore known principle should equity aid him under such circumstances.

There is no evidence whatsoever in the record to support the finding that defendant on May 1, 1941, evicted plaintiff from the premises. Whether plaintiff be deemed to have abandoned the lease and premises on February 1, 1941, as alleged in his pleadings and found by the court, or on April 18, as also inconsistently found by the court, is immaterial. In either event he had abandoned the premises prior to May 1, and hence could not then have been evicted by defendant. (*Cf. Universal Milk Co.* v. *Wood* (1928), 205 Cal. 751, 756 [272 P. 745].) Obviously, the renting of the adjoining store to Smith under the circumstances shown did not constitute an eviction of plaintiff from the premises demised to him or a release of plaintiff from the obligations of the lease. The court also found that defendant on May 1, did "accept the abandonment by plaintiff of the premises described in said lease." The mere circumstance that defendant rented the adjoining storeroom to Smith for "the sale of linoleum and kindred products," while it may show cognizance of the fact that plaintiff had retired from the furniture business, does not show an acceptance of plaintiff's abandonment of the premises in the sense of releasing him from the obligations of the lease. The substance of the evidence

precludes a finding or conclusion of law that defendant released plaintiff from such obligations.

It may well be that if plaintiff had paid or offered to pay the delinquent and accruing rent, had given notice to defendant that he, plaintiff, intended to reestablish his business in the leased premises as of some definite date, and demanded that defendant prior to such date terminate the renting to Smith (see *Strong* v. *Morrison* (1927), 87 Cal.App. 169, 171 [261 P. 1051]), plaintiff would have been entitled to declare a breach of the lease by defendant and secure its cancellation or termination in equity if defendant failed to accede to such demand. But plaintiff had taken none of those steps at the time he gave notice to defendant of rescission and forfeiture or at the time he sued for equitable relief, and no valid reason appears why defendant should be obliged in the meantime to forego the rental received from Smith, on pain of forfeiture of the lease of his defaulting tenant—the plaintiff.

Plaintiff has urged that equitable principles are inapplicable because, he asserts, "The judgment awards no relief in equity. . . . No decree or judgment of rescission was given." Although by its judgment the trial court did not declare the lease rescinded *ab initio* it did decree the same forfeited or terminated as to executory provisions including the obligation to pay all rent accruing subsequent to April 30, 1941. This is an equitable decree (it has been termed "rescission"; see *Medico-Dental Bldg. Co.* v. *Horton & Converse* (1942), *supra*, 21 Cal.2d 411, 432) and it should stand or fall by the same principles which govern rescission, insofar as the basic right to invoke equity is concerned.

By both legal and equitable principles plaintiff was bound to perform the obligations on his part to be performed before he could claim relief against defendant. As stated in *Johnson* v. *Moss* (1873), 45 Cal. 515, 518, "The plaintiff then was the first to violate the agreement, and if . . . he suffered damage, we do not see how he can be heard to complain of it. He should have performed his part of the agreement before insisting upon performance by the defendant." Section 1439 of the Civil Code provides that "Before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself; and must be able and offer to fulfill all conditions concurrent so imposed upon him on the like fulfillment

by the other party, except as provided by the next section [hereinafter quoted]." Obviously, plaintiff did not "offer to fulfill all conditions concurrent . ... imposed upon him." On the contrary he was, by his own sworn admissions and averments, in default on such conditions at all times concerned up to and including the time of trial. (*Cf. Universal Milk Co.* v. *Wood* (1928) *supra,* 205 Cal. 751.) According to such sworn admissions and averments he abandoned the premises and the lease on February 1, 1941, and failed to pay any rent thereafter. He again abandoned, or reaffirmed abandonment of, the premises on April 18, 1941, and six days later notified the defendant in writing that he would "no longer be bound to the provisions of the lease on his part to be performed." This notice was unconditional. It contained no offer to pay delinquent rent or accruing rent. It set forth no demand that defendant discontinue the plan to rent the adjoining storeroom to Smith commencing the following May 1. It contained no notice that plaintiff intended to reestablish a furniture business in the leased premises or elsewhere. Obviously, defendant was not in default for any breach of the restrictive covenant at the time of plaintiff's abandonment of the premises and unconditional renouncement of his obligations whether the abandonment be regarded as having taken place on February 1 or April 18.

The restrictive covenant in question was an agreement to protect plaintiff against *competition* in the same building in the same line of business. Since plaintiff had retired from business not later than in the preceding January and since it is true, as the trial court found, "that by conducting an auction in January of 1941 plaintiff did give notice to the defendant that plaintiff was retiring from business and discontinuing the conduct of a furniture store in the leased premises," it is apparent that plaintiff could not place himself in a position where he could rightfully complain of the month to month tenancy of Smith without first offering to pay both the delinquent and the accruing rent and giving defendant reasonable notice that he intended to reestablish and resume conduct of a furniture store at some definite date. After plaintiff had retired from business and ceased paying rent the covenant to protect plaintiff against competition in the furniture business in the same building became immaterial and would so remain until and unless plaintiff offered to cure his default, and resume the payment of rent, and

notified the defendant that he intended to reestablish a furniture business in the premises. Plaintiff, by giving notice that he would not perform the conditions on his part to be performed (at a time when defendant was not in default) brought himself and defendant within the purview of section 1440 of the Civil Code, which provides that ''If a party to an obligation gives notice to another, before the latter is in default, that he will not perform the same upon his part, and does not retract such notice before the time at which performance upon his part is due, such other party is entitled to enforce the obligation without previously performing or offering to perform any conditions upon his part in favor of the former party.'' (See, also, *Twomey,* v. *People's Ice Co.* (1884), 66 Cal. 233 [5 P. 158]; *Dunn* v. *Daly* (1889), 78 Cal. 640, 644 [21 P. 377]; *Wood, Curtis & Co.* v. *Seurich* (1907), 5 Cal. App. 252, 253-255 [90 P. 51]; *Ross* v. *Tabor* (1921), 53 Cal. App. 605, 612 [200 P. 971]; *Rathbun* v. *Security Mfg. Co.* (1927), 82 Cal.App. 793, 796 [256 P. 296]; *State Ath. Com.* v. *Massachusetts Bonding etc. Co.* (1941), 46 Cal.App.2d 839, 842 [117 P.2d 80]; 6 Cal.Jur. 488-489, § 288.) Furthermore, it is to be remembered that the relief sought by plaintiff both in his complaint and in his answer to the cross-complaint is equitable and that ''It is elementary that a party to an agreement may not rescind it while himself in default in respect to a material part thereof.'' (*Gavina* v. *Smith* (1944), *ante,* p. 501 [154 P.2d 681]; *North American D. Co.* v. *Outer Harbor etc. Co.* (1918), 178 Cal. 406, 413 [173 P. 756]; see, also, *State of California* v. *McCauley* (1860), 15 Cal. 429, 454, 457-458; *Fairchild etc. Co.* v. *Southern Ref. Co.* (1910), 158 Cal. 264, 273 [110 P. 951]; *California Sugar etc. Agency* v. *Penoyar* (1914), 167 Cal. 274, 280 [139 P. 671].) And under the circumstances of this case, no actual damage whatsoever having been incurred by plaintiff, equity should not deny to defendant a reasonable opportunity, after proper demand, to rectify the asserted breach. (See 10 Cal.Jur. 492, § 34; 12 Cal.Jur. 633-634, § 3.)

It has also been suggested, on behalf of plaintiff, that a letter written to his attorney by defendant's attorneys on April 29, 1941, constituted an actual, a constructive, or an anticipatory breach of the restrictive covenant. But this letter was not written until *after* plaintiff had defaulted, had abandoned the premises, and had unconditionally renounced

his obligations. It could not operate retroactively to give plaintiff as of April 18 a right of action or of affirmative defense or of equitable disavowal of obligations which he did not then possess. Furthermore, such letter does not purport to declare, nor does it warrant the inference, that the defendant would have declined to respect its obligations to protect the plaintiff against competition in the building if the plaintiff had cured his default, retracted his renouncement of obligations, and notified defendant that he intended to reestablish a furniture business in the leased premises. Relative to the Smith tenancy the letter merely states *as factual matters* that "We are advised that the new tenancy that has been created affecting one of the stores in the same building does not *in fact* authorize the new tenant to conduct therein a furniture store or to conduct any business therein except the business of selling linoleum. In this connection we are also advised that even while your client *was* in business in the leased premises *he did not handle linoleum*. We are advised further that your client *wholly discontinued business at the leased premises before the new tenancy was created*. . . ." (Italics added.) Such statements relate wholly to a factual situation, which, if erroneously stated, could have been corrected. They do not dispute the legal obligation of the lessor to protect the lessee against competition in the building during any period while lessee might be conducting a furniture business in the leased premises. Such letter also negatives any conclusion that the defendant intended to release the plaintiff from his promises; it states specifically that "The lessor insists that the lessee is still bound by the terms of the lease and that the lessee is obligated to continue to pay the rent provided for the lease." Under the conditions existing on April 29, when the letter was written, it cannot be held that any statement in that letter constituted or evidenced a breach of the restrictive covenant, either actual, anticipatory, or constructive.

Defendant contends, further, that inasmuch as the trial court limited defendant to only three months' rental—in the sum of $1,050—the award of $300 as attorney's fees was granted for the recovery of that amount, and that should additional rent be found to be due then an increased award of attorney's fees should follow. Plaintiff asserts that inasmuch as the defendant lessor neither brought nor instituted this action, but merely cross-complained in the suit filed by plaintiff, he should have been awarded no attorney's fees. How-

ever, as stated in *Pacific Finance Corp.* v. *Superior Court* (1933), 219 Cal. 179, 182 [25 P.2d 983, 90 A.L.R. 384] (see also *Millar* v. *Millar* (1921), 51 Cal.App. 718, 722 [197 P. 811]), ''cross-actions . . . are still distinct and independent causes of action, so that when properly interposed and stated the defendant becomes in respect to the matters pleaded by him, an actor, and there are two simultaneous actions pending between the same parties wherein each is at the same time both a plaintiff and a defendant.'' It therefore appears that plaintiff's action in filing its cross-complaint entitled it to attorney's fees upon the recovery of rentals from plaintiff lessee, within the hereinabove quoted provision of the lease.

In my opinion the portions of the judgment appealed from, including the portion limiting recovery of attorney's fees to the sum of $300, should be reversed.

Traynor, J., concurred.

Appellant's petition for a rehearing was denied January 25, 1945. Traynor, J., and Schauer, J., voted for a rehearing.