[Civ. No. 55583. Second Dist., Div. Four. Dec. 10, 1979.]

SAMUELSON NATIONAL, Plaintiff and Appellant, v.
KAISER-AETNA et al., Defendants and Respondents.

554

**COUNSEL**

Millikan & Hardy, C. E. Millikan, Lane J. Thomas and Jeffrey B. Robinson for Plaintiff and Appellant.

Paul, Hastings, Janofsky & Walker, Joseph J. O'Malley, Norman A. DuPont, Sheppard, Mullin, Richter & Hampton, Don T. Hibner, Jr., and Richard P. Sybert for Defendants and Respondents.

---

OPINION

**KINGSLEY, Acting P. J.,**—Plaintiff appeals from orders dismissing its complaint after orders sustaining without leave to amend the demurrers of the two defendants. We affirm the orders.

Since the case comes to us on demurrers, and those demurrers admitted (so far as we are now concerned) the facts, but not the conclusions, of the complaint, we set forth, as facts, the essential allegations of that complaint.[1]

Defendant Kaiser-Aetna is the developer of a large tract of land in Los Angeles County, known as the "Warner Center." It subdivided the tract (some 1,100 acres) into various subtracts, with the intent and purpose of developing an industrial complex. As a part of that development, it executed and recorded an elaborate declaration of covenants, conditions and restrictions, of which the following provisions are herein pertinent:

"ARTICLE III

"REGULATION OF IMPROVEMENTS

"SECTION 3.1 APPROVAL OF PLANS

"A. APPROVAL REQUIRED No improvement shall be erected, placed, altered, maintained or permitted to remain on any land subject to this DECLARATION until final plans and specifications showing that plot layout, all exterior elevations with materials and colors therefor, signs and landscaping shall have been submitted to and approved in writing by GRANTOR. Such final plans and specifications shall be sub-

---

[1] The briefs discuss a large number of "facts' that do not appear in the complaint; we have, of course, not set them forth here or considered them in our opinion, except that, because we can see in none of them any matter material to the issue before us, we reject appellant's suggestion that it should have been allowed to amend to plead some of them.

mitted in writing in duplicate over the authorized signature of the owner, lessee, licensee or other occupant of the site or his authorized agent. Under no circumstances shall the GRANTOR approve metal-clad buildings of any type or design other than 'curtain wall'. Changes in approved plans which materially affect building size, placement or external appearance must be similarly submitted to and approved by GRANTOR.

"B. BASIS FOR APPROVAL Approval shall be based, among other things, on adequacy of site dimensions (a minimum lot size of 40,000 square feet will be required for Tracts 27192, 30615, 30715 and five acres for Tract 27894), conformity and harmony of external design with neighboring structures, effect of location and use of proposed improvements on neighboring sites, the nature. of improvements on neighboring sites and the types of operations and uses thereof, relation of topography, grade and finish ground elevation of the site being improved to that of neighboring sites, proper facing of main elevation with respect to nearby streets, adequacy of screening of mechanical air conditioning or other rooftop installations, and conformity of the plans and specifications to the purpose and general plan and intent of this DECLARATION. No plans will be approved which do not provide for the underground installation of powerlines from the lot lines to buildings. GRANTOR shall not arbitrarily or unreasonably withhold its approval of said plans and specifications.

"SECTION 4.3 OTHER OPERATIONS AND USES

"Operations and uses which are neither specifically prohibited nor specifically authorized by these restrictions may be permitted in a specific case if operational plans and specifications are submitted to and approved in writing by GRANTOR. Approval or disapproval of such operational plans and specifications shall be based upon the effect of such operations or uses on other property subject to these restrictions or upon the occupants thereof, but shall be in the sole discretion of GRANTOR." Thereafter plaintiff purchased a portion of the tract, taking subject to the declaration then of record. It has subdivided its property into several lots. Subsequently, Kaiser-Aetna sold a portion of the tract, adjoining that purchased by plaintiff, to defendant Warner Racquet Club. In connection with that sale, Aetna agreed with the club that "for an unlimited period which would be at least three (3) years from the date of that agreement, to wit March 1974, only the club would be allowed

or permitted by Kaiser-Aetna to develop and conduct a tennis, handball, or racquet ball business with Warner Center."[2] Plaintiff subsequently secured a prospective tenant for the portion of its property adjoining that sold to the club for use as a racquet ball and handball facility and proposed to construct a building to be used by that tenant for that purpose. After originally approving plaintiff's construction plans for that proposed building, Kaiser-Aetna, at the demand of the club, withdrew that approval and denied approval.

Based on that sequence of events, plaintiff sued both Kaiser-Aetna and the club, setting forth three causes of action against Kaiser-Aetna and two against the club. Those causes of action were: (1) for damages for a conspiracy in restraint of trade; (2) for malicious interference with plaintiff's prospective business advantage and (3) (against Kaiser-Aetna only) for breach of contract.

## I

We point out that, had Kaiser-Aetna acted unilaterally, and without any involvement by the club, its action in denying approval of the proposed building would have been legal and proper. The declaration expressly permitted refusal because of "effect of location and use of proposed improvements on neighboring sites, the nature of improvements on neighboring sites and the types of operation and uses thereof." For a developer of an industrial complex to insist on a variety of uses, and to limit use of part of its property to a use not inconsistent with that desired variety, would be a legitimate business decision and one to which, by purchasing subject to the declaration, plaintiff had agreed.

## II

In spite of some language in its briefs, we can see no illegality had Kaiser-Aetna done no more than to acquiesce in a *request* by the club that it exercise its discretion by denying approval to plaintiff's proposed construction. Kaiser-Aetna was entitled, in making decisions, to receive advice and information from anyone as to the "effect" of a proposed improvement on other sites in the tract.

---

[2]In their briefs filed in this court, both Kaiser-Aetna and the club insist that the agreement was intended to mean, and is construed by them, as binding Kaiser-Aetna only for a three-year period *expiring* in March of 1977. As we have said above, in passing on a demurrer we must ignore that attack on the factual allegation in the complaint; had defendants desired to make an issue of that alleged "fact," their remedy was motion for summary judgment and not demurrer.

## III

 Stripped of the verbiage and heat contained in the briefs, the cases before us turn on a single issue—did Kaiser-Aetna act illegally because its action was (as alleged) based on its agreement with the club to exercise its discretion in the manner that it did? We conclude that it did not.

As we have said above, it is a legitimate business purpose for a developer (or a landlord) to elect to create and maintain a piece of property devoted to a large number of various uses. Such a planned development will attract to the property a variety of prospective customers who would not be attracted by a single use, with a consequent advantage to all users. But a prospective purchaser, for obvious reasons, needs to be assured that that variety will be preserved and that the property as a whole does not turn into a single use area. By the declaration, to which plaintiff was subject, Kaiser-Aetna had given clear advance warning and promise to all prospective buyers that such a variety was intended and would be maintained. We can see no wrong in the developer agreeing, in advance, that a proposed use of such a nature that the desired variety cannot be assured unless that use is exclusive.

Although plaintiff cites to us sundry authorities which, it contends, indicate that, in business affecting interstate commerce, restrictive covenants may be suspect under the Sherman Act, we are here concerned only with an intrastate transaction. The law in California, at least since the decision in *Medico-Dental Building Co. of Los Angeles* v. *Horton & Converse* (1942) 21 Cal.2d 411 [132 P.2d 457], has recognized, and enforced, lease provisions similar to the agreement between Kaiser-Aetna and the club. In *Kulawitz* v. *Pacific etc. Paper Co.* (1944) 25 Cal.2d 664 [155 P.2d 24], the Supreme Court said (at p. 669): "A covenant not to let other premises in the lessor's property or permit their use for certain purposes during the existence of the lease with the covenantee is binding . . . ." We can see no difference between the action of the lessor of a large building or shopping center and that of a developer. The same considerations, requiring a variety of tenants, exist in both situations. The club validly conditioned its purchase from Kaiser-Aetna on the latter's assurance that that variety would not be encroached on by another racquet club or clubs. Plaintiff cannot here complain that that assurance was kept by the exercise of Aetna's rights under the declaration.

## IV

Since we conclude that the agreement between Kaiser-Aetna and the club, alleged in the complaint, was lawful, it follows that Kaiser-Aetna violated no rights of plaintiff in complying with it. Its exercise of its powers under the declaration did not amount to any *illegal* interference with plaintiff's proposed lease and the exercise of those powers was not in violation of the provisions of section 4.1 of the declaration.

The orders of dismissal, herein appealed from, are affirmed.

Jefferson (Bernard), J., and Swearinger, J.,* concurred.

A petition for a rehearing was denied December 27, 1979, and appellant's petition for a hearing by the Supreme Court was denied February 7, 1980.

---

*Assigned by the Chairperson of the Judicial Council.